1
2
3
4
5
6                    UNITED STATES DISTRICT COURT

7                         DISTRICT OF NEVADA

8                                    * * *

9   IN RE ALLIED NEVADA GOLD CORP.,      Case No. 3:14-cv-00175-LRH-WGC
    SECURITIES LITIGATION
10                                        ORDER

11

12

13

14

15          Defendants Scott Caldwell, Robert Buchan, Randy Buffington, and Stephen Jones moved

16  to dismiss the second consolidated amended complaint ("SAC") in this federal securities class

17  action. ECF No. 126. Plaintiffs opposed the motion and Defendants filed a reply. ECF Nos. 132

18  and 135. Lead Plaintiff Andrey Slomnitsky filed the SAC after the court granted Defendants'

19  motion to dismiss the first amended complaint ("FAC"). ECF No. 125; *see* ECF No. 120.[1] The

20  court dismissed the FAC for failing to adequately plead the required elements for a claim

21  brought under Section 10 and Rule 10(b)-5 of the Securities Exchange Act ("SEA"), which

22  include: (1) falsity, (2) scienter, and (3) causation. ECF No. 120. For the same reasons that the

23  court dismissed the FAC, the court now dismisses the SAC with prejudice.

24  / / /

25  / / /

26

27  _____
    [1] ECF No. 120 is the court's August 2016 order dismissing the FAC. *See In re Allied Nevada
    Gold Corp.*, No. 3:14-CV-00175-LRH-WGC, 2016 WL 4191017 (D. Nev. Aug. 8, 2016) (herein
28  referred to as "ECF No. 120" or "August 2016 order").

                                          1

# I.     FACTUAL BACKGROUND

Plaintiffs brought this federal securities class action on behalf of investors who purchased stock in Allied Nevada Gold Corporation ("Allied") from January 18, 2013, to August 5, 2013, (the "class period"). ECF No. 125 at ¶ 1.

During the class period, Allied operated the Hycroft Mine in Nevada, which consisted of three leach pads: the Lewis leach pad, the Brimstone leach pad, and the North leach pad. *Id.* at ¶¶ 2, 5. The instant class action focuses on the operations at the Lewis leach pad. *See id.*

Allied mined and developed the Hycroft Mine in order to recover gold and silver from oxide ores through a heap-leaching process. *Id.* at ¶¶ 3–4. The heap-leaching process requires the creation of a leach pad, which is created by compacting soil to create a flat but sloped foundation for the placement of an impermeable barrier. *Id.* at ¶ 14. The impermeable barrier is the leach pad, on which gold and silver-bearing ore is placed after it is extracted, crushed, and coated with lime. *Id.* at ¶¶ 15–16. The crushed ore is then doused with a diluted cyanide solution to dissolve the gold and the silver from the ore. *Id.* at ¶ 16. This process creates a solution, called the pregnant solution, that holds the dissolved gold and silver. *Id.* The pregnant solution percolates through the ore stacked on the leach pad. *Id.* at ¶¶ 17–18. The ability of the pregnant solution to percolate through the stacked ore is essential to the heap-leaching process. *Id.* at ¶¶ 19–22. At the end of the process, the gold and the silver are removed from the pregnant solution by carbon absorption. *Id.* at ¶ 23. Allied conducted a heap-leaching process at the Lewis leach pad during the class period, during which time, the Lewis leach pad experienced ongoing operational difficulties. *Id.* at ¶¶ 24–25.

In addition to conducting a heap-leaching process at the Hycroft mine, Allied sought to expand its leach pad operations. *Id.* at ¶ 5. It engaged in expansion projects, such as increasing the mining rate, adding process machinery, constructing a mill, and upgrading infrastructure items. *Id.* at ¶ 5. However, Allied eventually suspended its expansion projects in August 2013 due to the ongoing operational difficulties at the Lewis leach pad. *Id.* at ¶ 47.

In the complaint and the opposition to the instant motion, Plaintiffs focus largely on an activity known as "belly-dumping." *See generally id.; see also* ECF No. 132. Belly dumping is

the use of large trucks that release piles of lime while driving over a leach pad. ECF No. 125 at ¶ 25. However, Plaintiffs identify the issue that impeded the recovery of gold and silver at the Lewis leach pad as a condition known as "blinding." *Id.* at ¶¶ 25; ECF No. 132 at 3. Blinding occurs when an impermeable barrier is created within the stacked ore on the leach pad, which inhibits the leaching process by preventing the leaching solution from soaking ore located below the impermeable barrier. ECF No. 125 at ¶ 25.

Plaintiffs complain that four Defendants caused the stockholders' loss during the class period by not disclosing the blinding issue: (1) Scott A. Caldwell, (2) Robert M. Buchan, (3) Randy E. Buffington, and (4) Stephen M. Jones. *See generally id.* Plaintiffs allege that each Defendant—all high-ranking Allied officials at some time during the class period—were extensively experienced in mining and had a comprehensive understanding of the heap-leaching process. *Id.* at ¶¶ 11, 57–60.

Through the four high-ranking Defendants, Allied issued a variety of press releases and financial information during the class period. *See generally id.* (referencing multiple press releases and financial documents).[2] It also participated in several conference calls to discuss the Hycroft Mine's performance. *See generally id.* (quoting multiple conference calls held by Allied).[3] Plaintiffs allege that the press releases, financial statements, and conference calls all contained materially false and misleading statements about: (1) the operations of the Lewis leach pad, (2) Allied's cash position and access to capital, (3) the expansion project of the Hycroft Mine, and (4) Allied's favorable financial guidance. *Id.* at ¶¶ 156, 162, 180, 203. Plaintiffs also allege that Defendants knew the statements were materially false and misleading at the time the statements were made. *See id.*

*/ / /*

---

[2] Plaintiffs reference Allied's press releases released on the following dates: January 18, 2013, February 22, 2013, February 25, 2013, March 21, 2013, March 27, 2013, April 8, 2013. Plaintiffs also reference Allied's 2012 Form 10-K, which is a financial statement that Allied filed with the Securities and Exchange Commission on February 25, 2013. *See* ECF No. 125.

[3] Plaintiffs quote from conference calls held by Allied on January 18, 2013, February 25, 2013, and April 9, 2013. *See* ECF No. 125.

Plaintiffs then allege that the truth regarding Allied's business was slowly revealed to stockholders beginning on April 30, 2013. *Id.* at ¶¶ 183–86. On April 30, Allied announced its financial results for the first quarter of 2013 and its "higher than expected" production costs. *Id.* at ¶ 183; *see also* ECF No. 126 at Ex. L. Allied then disclosed that it would likely phase the expansion project of the Hycroft mine and that it planned to issue a secondary public offering ("SPO"). ECF No. 125 at ¶¶ 185–86; *see also* ECF No. 126 at Ex. L. Allied also filed a Form 10-Q, in which it made projections regarding gold and silver production for the year of 2013 and stated it had sufficient capital and access to funding. ECF No. 125 at ¶¶ 188–89; *see also* ECF No. 126 at Ex. 15. The following day, May 1, 2013, Allied held a conference call, in which Defendants explained their reasoning for phasing the expansion project and for issuing a SPO. ECF No. 125 at ¶ 191; *see also* ECF No. 126 at Ex. N. In the conference call, Defendants reiterated their confidence in the business plan and its ability to deliver as planned. ECF No. 125 at ¶¶ 192–95; *see also* ECF No. 126 at Ex. N.

Then, on May 2, 2013, Allied filed an automatic shelf registration statement on Form S-2 with the Securities Exchange Commission ("SEC"). ECF No. 125 at ¶ 214. On May 9, 2013, Allied amended the registration statement, offering to sell fourteen million shares of Allied stock in the SPO. *Id.* at ¶ 215, ECF No. 126 at Ex. O. On May 17, 2013, Allied announced the closing of its sale of the fourteen million shares in the SPO at $10.75 per share. ECF No. 125 at ¶¶ 211, 230. On July 8 and July 22, 2013, Allied released two new press releases, which allegedly further exposed the truth about Allied's business. *Id.* at ¶¶ 233–34; *see also* ECF No. 126 at Exs. P and Q.

However, Plaintiffs contend that full disclosure regarding Allied's operations and financial positions was not made until early August 2013. *Id.* at ¶¶ 241–50. Specifically, on August 6, 2013, Defendants issued a press release and held a conference call, announcing its production costs had increased dramatically and would continue to rise because of operational defects at the Lewis leach pad. *Id.*; ECF No. 126 at Exs. R and S. It also announced that the expansion project was indefinitely suspended as a result of the operational issues. ECF No. 125 at ¶ 241; *see also* ECF No. 126 at Exs. R and S. The next day, Allied's stock dropped from $5.90

per share at the close of trading on August 5, 2103, to $3.73 per share at the close of trading on August 7, 2013. *Id.* at ¶ 251.

Plaintiffs allege that Defendants knew the Lewis leach pad suffered from the blinding issue at the time in which the alleged misstatements were made. *See generally* ECF No. 125. In so alleging, Plaintiffs rely in part on a May 2, 2013 letter that Defendants sent to the Nevada Division of Environmental Protection (NDEP). *Id.* at ¶¶ 210, 246. The letter to NDEP "proposes a sonic drill program for the Brimstone and Lewis Leach Pads." ECF No. 134 at Ex. A. The accompanying documentation states: "Mineralization within a heap can be located and characterized through drilling" and "[Allied] intends to case these drill holes … for possible use as injection wells in the future." *Id.* Because the letter and accompanying report allegedly took "a number of days to weeks to prepare[,]" Plaintiffs allege Defendants knew about the blinding condition and planned to use the drilling program to confirm the areas in the Leach Pad where blinding was occurring. ECF No. 125 at ¶ 210. The "investigative drilling program" began in approximately June or July of 2013. *Id.* at ¶¶ 100, 118, 120. Plaintiffs also rely on multiple statements from fifteen confidential witnesses, all of whom are Allied's former employees. *Id.* at ¶¶ 61–122. Ten of the fifteen confidential witnesses were included in the FAC. *Compare* ECF No. 98 *with* ECF No. 125.

## II.     PROCEDURAL BACKGROUND

Plaintiffs filed the first complaint in this action on April 3, 2014. ECF No. 1. The court consolidated this case on November 7, 2014, and named Andrey Slomnitsky as lead plaintiff. ECF NO. 59. Allied then filed for Chapter 11 bankruptcy. ECF No. 95. Plaintiffs filed the FAC on May 1, 2015. ECF No. 98. Defendants moved to dismiss the FAC on September 29, 2015. ECF No. 103. The court dismissed the FAC on August 8, 2016, but gave Plaintiffs leave to amend. ECF No. 120. The court dismissed the FAC because Plaintiffs' allegations failed to support the idea that Defendants knew the extent of the operational issues at the time the alleged misrepresentations were made. *Id.* Accordingly, Plaintiffs failed to plead falsity, scienter, and causation. *Id.*

///

Plaintiffs then filed the SAC on November 3, 2016, alleging two claims: (1) a violation of Section 10 under the SEA and Rule 10(b)-5; and (2) a violation of Section 20(a) of the SEA. ECF No. 125. Defendants moved to dismiss the SAC on January 25, 2017. ECF No. 126. Defendants also requested judicial notice of Allied's stock prices and the cost of gold on various dates. ECF No. 127. Plaintiffs filed an opposition to the motion, and Defendants replied. ECF Nos. 132, 135.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court may dismiss a complaint that fails to meet this standard under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) permits dismissal on the basis of either (1) the "lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In considering whether the complaint is sufficient to state a claim, the court accepts as true all factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotations omitted). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA") also govern securities fraud claims. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009) *as amended* (Feb. 10, 2009). Accordingly, a plaintiff must satisfy the heightened pleading standard required by both Rule 9(b) and the standards under PSLRA. *Id*. Rule 9(b) requires a plaintiff alleging fraud or mistake to "state with particularity the circumstances constituting fraud

6

or mistake. Malice, intent, knowledge, and other condition of mind of a person may be averred generally" Fed. R. Civ. P. 9(b); *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004). But while Rule 9(b) permits the general averment of a person's state of mind, the PSLRA requires a plaintiff alleging securities fraud to "plead with particularity both falsity and scienter." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002) (quoting *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001)); *see also Nursing Home*, 380 F.3d at 1230.

## IV.    DISCUSSION

The court first addresses the issue of judicial notice. The court then discusses each claim alleged by Plaintiffs in turn. Finally, the court turns to the issue of dismissal with prejudice.

### A.  Judicial Notice

A court may take judicial notice of "records and reports of administrative bodies." *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953). Under the Federal Rules of Evidence, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). Accordingly, "[a]though generally the scope of review on a motion to dismiss for failure to state a claim is limited to the [c]omplaint, a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiffs' claims; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotations and citations omitted). The court may "treat such a document as 'part of the complaint, and thus may assume that its contents are true for the purposes of a motion to dismiss under Rule 12(b)(6).'" *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

/ / /

Plaintiffs refer to and quote from the following: (1) Allied's press releases dated January 18, 2013, February 22, 2013, February 25, 2013, March 21, 2013, March 27, 2013, April 8, 2013, April 30, 2013, July 8, 2013, July 22, 2013, and August 6, 2013; (2) Allied's conference calls on January 18, 2013, February 25, 2013, April 9, 2013, May 1, 2013, and August 6, 2013; (3) Allied's financial statements including the 2012 Form 10-K filed February 25, 2013, the Form 10-Q filed April 30, 2013, and the Prospectus Supplement filed on May 9, 2013. Plaintiffs also refer to Allied's letter to NDEP, dated May 2, 2013. Plaintiffs' references and quotes from the forgoing form the basis for the allegations within Plaintiffs' SAC. Further, the parties do not dispute the authenticity of the documents provided to the court. The court therefore takes judicial notice of Exhibits B to S provided by Defendants and Exhibit A provided by Plaintiffs.

Additionally, Defendants request the court to take judicial notice of their Exhibit A, which contains a graphical representation of the published stock prices for Allied from October 1, 2012, to August 29, 2013; a table showing the published stock prices for Allied from October 1, 2012, to August 9, 2013; a graphical representation of the published prices for gold from October 8, 2012, to August 27, 2013; a table showing the published prices for gold from October 1, 2012, to December 31, 2012; and a table showing the published prices for gold from April 30, 2013, to August 9, 2013. A company's published stock prices qualify as judicially noticeable information. *See In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 81, 817 (C.D. Cal. 2004). "[P]ublicized commodities prices" also qualify as judicially noticeable information. *See In re Crude Oil Commodity Futures Litig.*, 913 F. Supp. 2d 41, 52 (S.D.N.Y. 2012). Plaintiffs did not object to any of Allied's exhibits. The court therefore takes judicial notice of Exhibit A provided by Defendants.

**B.  Violation of Section 10(b) and Rule 10b-5 of the Securities Exchange Act**

Section 10(b) of the SEA, 15 U.S.C. § 78j(B), makes it unlawful "for any person … [t]o use or employ, in connection with the purchase or sale of any security … any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the

/ / /

/ / /

8

Commission may prescribe[.]" *Id.* SEC Rule 10b-5, in turn, provides:

> It shall be unlawful for any person … (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

The basic elements of a Rule 10b-5 claim, therefore, are: (1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss. *See Dura Pharms., Inc. v. Broudo*, 125 S. Ct. 1627, 1631 (2005). The complaint must allege that defendants made false or misleading statements either intentionally or with deliberate recklessness. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999).

Below, the court considers the elements of falsity, scienter, and causation in turn.

## 1. Falsity

With respect to falsity, a securities fraud complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Gompper*, 298 F.3d at 895 (quoting 15 U.S.C. § 78u–4(b)(1)). To the extent an allegation is based on information and belief, "the complaint shall state with particularity all facts on which that belief is formed." *Id.* "A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet this standard." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008). Rather, "[t]he PSLRA has exacting requirements for pleading falsity." *Id.* A plaintiff must plead "specific facts indicating why" the statements at issue were false. *Id.* Like the element of scienter, the standard for pleading falsity is a stricter standard. *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1091 (9th Cir. 2002) (quoting *Ronconi*, 253 F.3d at 429).

/ / /

9

Further, to be actionable, a statement must be false "at [the] time by the people who made them." *Ronconi*, 253 F.3d at 430. "The fact that [a] prediction proves to be wrong in hindsight does not render the statement untrue when made." *In re VeriFone Sec. Litig.*, 11 F.3d 865, 871 (9th Cir. 1993). Mere "allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud." *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92–93 (2d Cir. 2010). It is "clearly insufficient for plaintiffs to say that [a] later, sobering revelation[ ] make[s] [an] earlier, cheerier statement a falsehood." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 997 (9th Cir. 1999) (alterations in original). Moreover, the Ninth Circuit has clarified that "fraud by hindsight is not actionable." *Ronconi*, 253 F.3d at 430 n. 12 (internal quotation marks omitted).

Plaintiffs allege Defendants made false statements, omitted information, or made statements lacking a reasonable basis in fact in regards to (1) the operations of the Lewis leach pad, (2) Allied's cash position and access to capital, (3) the Hycroft Mine expansion, and (4) Allied's financial guidance. *See* ECF No. 125 at ¶¶ 156, 162, 180, 203; *see also* ECF No. 132 at 11–17. The court first addresses the alleged misstatements as to each category in turn. The court then considers the rule regarding puffery and the rule created by PSLRA's safe harbor provision.

*i.* *Operations of the Lewis Leach Pad*

Plaintiffs allege Defendants made false statements, omissions, or statements lacking a reasonable basis in fact regarding the operational issues of the Lewis leach pad. ECF No. 132 at 11–17. Defendants argue that Allied disclosed the operational problems throughout the class period as issues became known and made statements consistent with their knowledge at the time of the statements. ECF No. 126 at 11–18.

The Lewis leach pad experienced ongoing operational difficulties during the class period. Plaintiffs attribute the operational difficulties to the blinding condition found on the leach pad via the sonic drilling program that Allied began in June or July of 2013. The issue, accordingly, depends on whether plaintiffs adequately pled that Defendants knew about the blinding

10

condition—not mere operational difficulties or belly-dumping activities—during the time in which their earlier statements were made. Plaintiffs have not met their burden under the PSLRA.

As the court explained in its August 2016 order that dismissed the FAC, the fact that Defendants made statements that were wrong or overly optimistic in retrospect does not support a claim of falsity. ECF No. 120 at 8–10. Plaintiffs attempted to avoid dismissal of the SAC by supplementing their allegations with ten new confidential witnesses, new quotes from the same press releases and conference calls, and the existence of a letter sent by Defendants to the NDEP seeking permission to conduct sonic drilling. However, Plaintiffs' new allegations all fail to contribute to the key issue: whether Defendants knew the blinding condition was causing the operational issues at the Lewis leach pad when the statements were made.

The new witnesses repeat the same information presented in the FAC; the allegations describe the ongoing issues and the belly-dumping that occurred at the Lewis leach pad. Many confidential witnesses allegedly describe general knowledge of the issues at the Lewis leach pad. The new key witnesses, however, do not confirm a date on which Defendants became aware of the blinding condition. Further, many of the new allegations from the confidential witnesses constitute unreliable hearsay and conclusory assertions. The court explained in the August 2016 order that "[u]nreliable hearsay and conclusory assertions do not demonstrate that a confidential witness is reliable." ECF No. 120 at 10. The new witnesses fail to persuade the court that Defendants knew about the blinding condition when the alleged falsities were made.

Similarly, Plaintiffs include new quotes from the same press releases and conference calls in which Defendants explained their efforts to remedy the ongoing operational issues. The court recognized Defendants' efforts to combat a problem that "became known gradually over time" in its August 2016 order. *See* EFC No. 9–10. The new quotes—some of which are merely truncated or elongated versions of quotes from the FAC—do not change the court's previous decision that Defendants were unaware of the full extent of the operational issues at the time in which Defendants made statements via the press releases, conference calls, and financial statements.

Finally, Defendants' letter to the NDEP seeking permission to conduct sonic drilling does not indicate that Defendants were aware of the blinding condition at that time. Instead, the letter

further demonstrates Defendants responded to the ongoing operational issues by seeking

permission to understand the mineralization with the heap of ore at the Lewis leach pad.

Accordingly, in May 2013, Defendants sought permission to institute a drilling program.

Defendants did not conduct the drilling until June or July of 2013. The results of the drilling

were not available until thereafter. The letter therefore does not show that Defendants were

aware of the full extent of the operational issues at the time the alleged falsities were made.

Plaintiffs fail to support the contention that Defendants' statements during the class period

regarding the operational issues at the Lewis leach pad were false or were lacking a reasonable

basis in fact.

### ii. *Allied's Cash Position and Access to Capital*

Plaintiffs next allege Defendants made false statements regarding Allied's cash position

and its access to capital. ECF No. 132 at 11, 13–17. Plaintiffs' allegations center on Allied's

change in position—its determination to pursue an SPO a few weeks after stating the move

would not be required. ECF No. 125 at ¶¶ 156, 162, 180, 203, 207; *see also* ECF No. 132 at 13.

Defendants argue that Plaintiffs' allegations attempt to plead fraud by hindsight. ECF No. 126

at 11–18.

Plaintiffs again fail to sufficiently plead that Defendants' change in position was the

result of deliberate falsehoods rather than the exercise of legitimate business judgment. Plaintiffs,

in fact, rely again on allegations previously made in the FAC. *See* ECF No. 120; *see also* ECF

No. 132 at 13 (stating that, according to confidential witnesses, "Allied had raided the

construction budget for the expansion to compensate for the reduction in operating cash flow.");

*compare* ECF No. 109 at 10, *with* ECF No. 132 at 13; *also compare* ECF No. 98 at ¶¶ 58, 75,

*with* ECF No. 125 ¶¶ 63, 83. This court previously found that these allegations failed to establish

falsity rather than describing actions that Defendants took when relying on their legitimate

business judgment. Plaintiffs therefore fail to plead falsity in regards to statements made about

Allied's cash position and access to capital.

/ / /

/ / /

### iii.    The Hycroft Mine Expansion

Plaintiffs also allege Defendants made false statements regarding the expansion project of the Hycroft Mine. ECF No. 125 at ¶¶ 156, 162, 180, 203; ECF No. 132 at 11–17. Defendants argue that Plaintiffs' allegations attempt to plead fraud by hindsight. ECF No. 126 at 11–18.

Plaintiffs fail to allege sufficient facts to demonstrate that Defendants were aware of the extent of the operational issues occurring at the Lewis leach pad when the alleged falsities were made. While Defendants made optimistic statements about their ability to complete the mine expansion, Plaintiffs fail to allege facts to support the idea that the statements went beyond optimism based on legitimate business judgment into the realm of falsehood.

### iv.    Financial Guidance

Plaintiffs lastly allege Defendants made misrepresentations by maintaining favorable financial guidance during the class period without disclosing the operational issues, the constrained cash flow, and the delay of the expansion of the Hycroft mine. ECF No. 125 at ¶¶ 156, 162, 180, 203. Defendants argue that Plaintiffs' allegations amount to a claim of fraud by hindsight. ECF No. 126 at 11–18.

Plaintiffs fail to meet the heightened pleading standard required of them to allege falsity as to Defendants' statements regarding financial guidance. While Defendants' statements were wrong in hindsight, Plaintiffs failed to show that Defendants' projections were false when made instead of merely being revised after "a sobering revelation" was realized. *See Yourish*, 191 F.3d at 997.

### v.    Puffery Statements

In addition to Plaintiffs' failure to adequately plead falsity rather than fraud by hindsight, the puffery statements identified by Plaintiffs are not actionable. In the Ninth Circuit, "vague, generalized assertions of corporate optimism or statements of 'mere puffing' are not actionable material misrepresentations under federal securities laws" because no reasonable investor would rely on such statements. *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008) (citing *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 352 F.3d 367, 379 (9th Cir. 2003)); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) ("[P]rofessional

investors, and most amateur investors as well, know how to devalue the optimism of corporate executives."). "When valuing corporations, … investors do not rely on vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers." *In re Cutera*, 610 F.3d at 1111.

"Statements of 'mere puffing' are forward-looking statements of optimism that are 'not capable of objective verification' and 'lack a standard against which a reasonable investor could expect them to be pegged.'" *In re Impac Mortg. Holdings*, 554 F. Supp. 2d at 1096 (quoting *Grossman v. Novell, Inc.*, 387 F.3d 468, 489 (6th Cir. 2004)). A court, for example, has held statements as inactionable, mere puffery such as: "We are very pleased with the learning from our pilot launch;" "[S]o far we're getting really great feedback;" and "[W]e are very pleased with our progress to date." *Wozniak v. Align Tech., Inc.*, No. C 09–3671 MMC, 2012 WL 368366, at *4–5 (N.D. Cal. Feb. 3, 2012). Likewise, "statements projecting 'excellent results,' a 'blowout winner' product, 'significant sales gains,' and '10% to 30% growth rate over the next several years'" have been held inactionable as mere puffery. *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1087 (N.D. Cal. 2005); *see also In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 868–89 (N.D. Cal. 2004) ("run-of-the-mill" statements such as "business remained 'strong'" are inactionable under § 10(b)); *see also In re LeapFrog Enter., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1050 (N.D. Cal. 2007) (vague statements were inactionable under § 10(b), including: "This is going to be a very big second half for us;" "Our underlying sell-through at the retail level remained very strong throughout the third quarter;" "[C]onsumer demand for our learning products is more vibrant than ever;" and "We are pleased with our progress."); *see also City of Royal Oak Ret. Syst. V. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1064 (N.D. Cal. 2012) (statements were inactionable under § 10(b), including: "Both Verizon and AT&T are strong partners;" "[The company has] strong demand metrics and good momentum;" and "[O]ur demand indicators are strong, our product portfolio is robust.").

Courts analyze whether statements constitute corporate optimism or mere puffery by considering the context in which the statement was made. *In re Bridgepoint Educ., Inc. Sec. Litig.*, No. 3:12-cv-1737 JM (WMC), 2013 WL 5206216, at *17 (S.D. Cal. Sept. 13, 2013).

14

Therefore, even a statement of opinion or of corporate optimism may be actionable if the statement was "an integral part of a representation of material fact … used to emphasize and induce reliance upon such representation." *Casella v. Webb*, 883 F.3d 805, 808 (9th Cir. 1989); *see also In re Bank of Am. Corp. Sec, Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 310 (S.D.N.Y) ("[T]here is a difference between enthusiastic statements amounting to general puffery and opinion-based statements that are anchored in 'misrepresentations of existing facts'") (quoting *Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000)).

Plaintiffs argue that Defendants made statements claiming an "absence of persistent and extensive operational problems, which was not true." ECF No. 132 at 16. The court disagrees with Plaintiffs' characterization of Defendants' statements. Through the multiple press releases and conference calls, which Plaintiffs reference within the SAC, Defendants continually disclosed the ongoing operational issues at the Lewis leach pad as the issues arose. Defendants discovered the ultimate issue—blinding—through the drilling program, which occurred after the alleged misstatements. Therefore, considering the context of Defendants' statements and the ongoing efforts to remedy the issues at the Lewis leach pad, Plaintiffs fail to identify an actionable misstatement. The court need not reach the issue of whether the alleged misstatements were made to induce reliance by investors. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) ("Absent an actionable misstatement, reliance does not come into play.").

### vi. Safe Harbor Provision

The court now turns to the parties' arguments regarding the safe harbor provision of the PSLRA. The safe harbor provision of the PSLRA makes forward-looking statements inactionable as a matter of law if the statements are identified as such and accompanied by "meaningful cautionary statements identifying important facts that could cause actual results to differ materially from those in the forward looking statement." 15 U.S.C. § 78u-5(c)(1)(A)(i). A forward-looking statement is "any statement regarding (1) financial projections, (2) plans and objectives of management for future operations, (3) future economic performance, or (4) the

assumptions 'underlying or related to' any of these issues." *No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003) (citing 15 U.S.C. § 78u-5). Further, a present tense statement can be covered by the safe harbor provision if, as a whole, the challenged statement relates to "future expectations and performance." *Intuitive Surgical*, 759 F.3d at 1058. A forward-looking statement must be accompanied by meaningful cautionary statements, which in turn make the statement inactionable and "the state of mind of the individual making the statement [ ] irrelevant." *In re Cutera*, 610 F.3d at 1112. Non-forward-looking statements or forward-looking statements unaccompanied by meaningful cautionary statements are actionable, but the plaintiff must prove that the speaker made the statement "with actual knowledge … that the statement was false or misleading." 15 U.S.C. § 78u-5(c)(1)(B).

Plaintiffs argue that Defendants' statements do not fall within the safe harbor provision of the PSLRA because statements of past or present fact do not fall within the safe harbor provision even if the statements are inextricably intertwined with forward-looking statements. ECF No. 132 at 16–17. The court struck down this argument in its August 2016 order. The court explained that the current law—precedent from the Ninth Circuit set forth in *Intuitive Surgical*—allows protection for statements mixed with non-forward-looking portions and forward-looking portions if "the challenged statements related to future expectations and performance." ECF No. 120 at 18–19, citing *Intuitive Surgical*, 759 F.3d at 1059. Here, the mixed statements constitute statements that are ultimately forward-looking statements. The statements relate to future abilities, expectations, and performance. Allied also included meaningful cautionary statements with the alleged misstatements. Therefore, the statements are inactionable under the safe harbor provision of the PSLRA.

### 2. Scienter

With respect to scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2); *see also Silicon Graphics*, 183 F.3d at 974 (facts must come closer to demonstrating intent as opposed to mere motive and opportunity). That is, plaintiffs must plead with

particularity the facts evidencing "the defendant's intention 'to deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194, and n. 12 (1976)). To satisfy the rigorous pleading standards of the PSLRA, the allegations contained within the complaint must give rise to an inference of scienter—not merely a plausible inference of scienter—that is "cogent and at least as compelling as any opposing inference of non-fraudulent intent." *Id.* at 314. The complaint must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness. *See Silicon Graphics*, 183 F.3d at 974. In considering whether a strong inference of scienter has been pled, "the court must consider *all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." *Gompper*, 298 F.3d at 897 (emphasis in original); *Tellabs*, 551 U.S. at 322–24 (holding the court must consider the complaint in its entirety, other appropriate sources such as documents subject to judicial notice, and plausible opposing inferences). This "inquiry is inherently comparative." *Tellabs*, 551 U.S. at 323. A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, allowing the complaint to survive a motion to dismiss only if the malicious inference is at least as compelling as any opposing innocent inference. *See id.* at 323–24*; see also Metzler*, 540 F.3d at 1066.

Plaintiffs argue that the complaint creates a strong inference of scienter because it alleges Defendants' mining experiences, access to the Lewis leach pad, involvement in regular meetings, presence at the Lewis leach Pad, and routine discussions with the market via press releases and conference calls. ECF No. 135 at 18. Based on the forgoing, Plaintiffs argue Defendants must have been aware of the blinding issue at the Lewis leach pad. *Id.* Plaintiffs base their argument on: (1) the confidential witnesses' alleged statements; (2) the core-operations doctrine; and (3) the replacement of management during the class period. *Id.* Plaintiffs also compare the allegations in this action with the allegations in *Makor Issues & Right, Ltd. v. Tallabs, Inc.*, 513 F.3d 702 (7th Cir. 2008) (herein, "Makor"). The court addresses each argument in turn.

Plaintiffs' argument first relies on the alleged statements of confidential witnesses. ECF No. 132 at 18, 20. Here, the confidential witnesses' allegations do not give rise to a strong

inference of scienter. The confidential witnesses, in large part, allege common knowledge of the ongoing operational issues at the Lewis leach pad. Allegations of common knowledge will not suffice under the applicable standard, which requires "specific descriptions of the precise means through which [fraud] occurred, provided by persons said to have personal knowledge of [the specific descriptions]." *In re Cabletron Sys., Inc.*, 311 F.3d 11, 30 (1st Cir. 2002). The allegations here do not satisfy such a demand. Further, the confidential witnesses' alleged statements do not establish a date on which Defendants became aware of the blinding condition rather than ongoing operational issues in general. And even more, the court must disregard the alleged statements of the confidential witnesses as a result of the statements lacking in specificity, being conclusory, and being based on hearsay, rumors, and speculations. *See In re Hypercom Corp. Sec. Litig.*, 2006 WL 1836181, at *5 (D. Ariz. July 5, 2006) ("[C]onfidential witnesses' unreliable or conclusory allegations will not be considered[.]"); *see also In re Metawave Communications Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1070 (W.D. Wash. 2003) ("[A] shared opinion among confidential witnesses does not necessarily indicate either falsity or a strong inference of scienter if the allegations themselves are not specific enough."); *see also In re Downey Sec. Litig.*, No. CV 08-3261-JFW(RZX), 2009 WL 2767670, at *10 (C.D. Cal. Aug. 21, 2009) ("The majority of Plaintiff's allegations regarding statements of the confidential witnesses again fails to establish with particularity the requisite foundation for reliability and personal knowledge of those confidential witnesses, and, thus, they do not give rise to a strong showing of scienter."). Here, the majority of the confidential witnesses' alleged statements must be disregarded for lacking specificity and for being based on hearsay and speculation.

Plaintiffs' argument next relies on the fact that the Lewis leach pad was one of two operating leach pads during the class period, which Plaintiffs argue allows knowledge of the blinding condition to be imputed to Defendants under the core-operations doctrine. ECF No. 132 at 19. Generally, a plaintiff may not simply allege "facts critical to a business's core operations or an important transaction are generally so apparent that their knowledge may be attributed to the company and its key officers." *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 848 (9th Cir. 2003) (quotation and emphasis omitted). But two exceptions exist to the general rule, under

which the Ninth Circuit has found bare allegations of falsely reported information probative under certain narrow conditions. *See S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008) (summarizing the exceptions).

The first exception permits general allegations about "management's role in a corporate structure and the importance of the corporate information about which management made false or misleading statements" to create a strong inference of scienter when these allegations are buttressed with "detailed and specific allegations about management's exposure to factual information within the company." *Id.* at 785.

Here, Plaintiffs fail to buttress their allegations with detailed and specific allegations about Defendants' exposure to the blinding condition. Plaintiffs instead allege general knowledge and the presence of Defendants at the Lewis leach pad. Therefore, Plaintiffs have not sufficiently alleged that Defendants were in a position to discover the blinding issue prior to receiving the results from the drilling program. *See Zucco Partners*, 552 F.3d at 1001 (holding allegations that management had access to manipulated accounting numbers or that management analyzed the inventory numbers closely did not support the inference that management was in a position to know that such data was being manipulated).

The second exception permits an inference of scienter when misrepresented information is readily apparent to senior management. *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987–89 (9th Cir. 2008) (holding the defendants' awareness of falsity could be assumed where the defendants "must have known" about the falsity of the information provided to the public because the falsity of the information was obvious from the operations of the company). The facts must be patently obvious—the "facts [must be] prominent enough that it would be 'absurd to suggest' that top management was unaware of them." *Id*. at 989 (quoting *No. 84 Employer-Teamster Joint Council Pension Tr. Fund*, 320 F.3d at 943 n. 21).

Plaintiffs fail to include the specific admissions required by the Ninth Circuit to bring the instant claims under the core-operations doctrine because Plaintiffs fail to demonstrate a single, specific, and *identified issue*. The allegations in whole do not show that Defendants were aware of the blinding condition at the time of their statements rather than ongoing operational issues in

general. The drilling—which revealed the blinding condition—did not occur until June or July of 2013. So while Defendants were aware of operational issues prior to receiving the drilling results, the court is not convinced that the blinding condition was obvious from the operations of the company. Further, the allegation that "anyone who visited [the Lewis leach pad]" would notice the blinding condition also does not convince the court; it is conclusory in nature and lacks particularity to the knowledge of Defendants. The court therefore adopts the inference that Defendants continually investigated the ongoing issues at the Lewis leach pad (as recognized by the confidential witnesses) and continually disclosed the results of the investigations as Defendants became aware the extent of the issues.

Plaintiffs next argue that the "sudden and unexpected" replacement of Defendant Caldwell with Defendant Buchan and then of Defendant Buchan with Defendant Buffington constitutes circumstantial evidence of scienter. ECF No. 132 at 19. Plaintiffs' assertions are conclusory, and they have not alleged any additional facts to show that the resignations indicate scienter. *See Zucco Partners*, 552 F.3d at 1002 (holding "a plaintiff must allege sufficient information to differentiate between a suspicious change in personnel and a benign one," and "[m]ere conclusory allegations that a financial manager resigns or retires during the class period … without more, cannot support a strong inference of scienter."). Here, Plaintiffs failed to allege suspicious circumstances in relation to the replacement of management during the class period. Therefore, the change in personnel does not amount to circumstantial evidence of scienter.

Finally, Plaintiffs allege that "the facts of this case so closely mirror those of [*Makor*] … that Defendants' motion to dismiss … must be denied out of hand." ECF No. 132 at 10 (citing *Makor*, 513 F.3d 702). The court disagrees. In *Makor*, the Seventh Circuit found a strong inference of scienter after the defendant company, through its CEO, made statements alleging a strong public demand for the company's flagship product and a strong public interest in the company's new product. 513 F.3d at 709–12. The strong demand for the flagship product, however, was manufactured by the defendants. *See id.* at 709–10. The company engaged in an activity called "channel-stuffing," which entails shipping unrequested inventory to customers. *Id.* The activity boosted the company's revenues and created the image of a strong public demand

for the flagship product. *Id.* Further, the company's new product was not yet available to the public despite the company's statements to the contrary. *Id.* at 709. The company and the company's CEO were aware of the channel-stuffing activities and were aware of the unavailability of the new product. *Id.* at 709–10. Based on that knowledge and the activities, the Seventh Circuit found an inference of scienter was more likely than not. *Id.* at 710–11.

Plaintiffs fail to plead a comparable inference of scienter to that in *Makor.* Here, Defendants did not intentionally inflate Allied's revenue numbers, but rather, offered predictions based on the information known to them at the time. Further, as explained above, Plaintiffs' allegations fall short in pleading that Defendants intended to deceive the public. Defendants continually investigated the ongoing issues at the Lewis leach pad and took action to correct known issues; Defendants continually disclosed the ongoing issues at the Lewis leach pad; and after Defendants conducted a drilling program, which discovered the blinding condition, Defendants notified the public of the extent of the issue via the July and August press releases and the August conference call. The instant case does not parallel *Makor.*

Accordingly, Plaintiffs fail to demonstrate that their allegations are at least as compelling as innocent alternatives. Plaintiffs allege that Defendants knew about the blinding condition throughout the class period and failed to disclose the issue to the public. But a more reasonable inference is that Allied likely needed time to fully understand the magnitude of the problems affecting the Lewis leach pad, and that Allied acted accordingly upon discovering the extent of the issues. Plaintiffs therefore fail to sufficiently plead scienter.

### 3. Causation

The court finally turns to loss causation. A securities fraud plaintiff must plead loss causation by demonstrating a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005); *see also Dura Pharms.*, 125 S. Ct. at 1633. "A misrepresentation is the proximate cause of an investment loss if the risk that caused the loss was within the zone of risk concealed by the misrepresentations." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 513 (2d Cir. 2010) (internal quotations removed). Therefore, "to plead loss

causation, the complaint[ ] must allege facts that support an inference that [defendant's] misstatements and omissions concealed the circumstances that bear upon the loss suffered such that plaintiffs would have been spared all or an ascertainable portion of that loss absent the fraud." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005).

A plaintiff is not required to show "that a misrepresentation was the sole reason for the investment's decline in value" in order to establish loss causation. *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1447 n. 5 (11th Cir. 1997) (emphasis added). "[A]s long as the mis-representation is one substantial cause of the investment's decline in value, other contributing forces will not bar recovery under the loss causation requirement" but will play a role "in determining recoverable damages." *Id.* But a plaintiff must plead loss causation "with sufficient specificity to enable the court to evaluate whether the necessary causal link exists" between material misrepresentations or omissions and the economic loss. *Teachers' Ret. Sys. of LA v. Hunter*, 477 F.3d 162, 186 (4th Cir. 2007). Further, the heightened pleading standard of "Rule 9(b) applies to all elements of a securities fraud action, including loss causation." *Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).

To plead loss causation, Plaintiffs rely on Allied's stock falling after the August 6 disclosure. Plaintiffs note that Allied's stock price also dropped after the first "partial reveal" at the end of April 2013. And Plaintiffs acknowledge the increase in Allied's stock prices after the July 22, 2013 disclosure. Plaintiffs argue that the surge in the stock prices was tied to the surge in the price of gold.

As explained in the August 2016 order, the price of gold is a primary driver of Allied's stock price. *See* ECF No. 120 at 28. When the price of gold rose in July 2013, after the July 22 disclosure, the price of Allied's stock rose as well. When the price of gold fell in August 2013, after Allied's August 6 disclosure, the price of Allied's stock fell. Plaintiffs correctly state that the alleged misrepresentations need only be a substantial cause to their loss in order to survive the instant motion to dismiss. ECF No. 132 at 22. But by recycling the same allegations from the FAC and the same arguments from Plaintiffs' opposition to the motion to dismiss the FAC, Plaintiffs again fail to offer an adequate explanation as to why Allied's stock price was tied to

22

the price of gold after one disclosure by Defendants but not the other. *See* ECF No. 120 at 27–28. The court concludes that Plaintiffs have not adequately alleged loss causation.

### C. Violation of Section 20(a) of the Securities Exchange Act

Section 20(a) of the SEA imposes liability upon "a defendant employee of a corporation who has violated the securities laws […], as long as the plaintiff demonstrates a primary violation of federal securities law and […] the defendant exercised actual power or control over the primary violator." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 623 (9th Cir. 2017) (quoting *Zucco*, 552 F.3d at 990) (internal citations omitted). Accordingly, a Section 20(a) claim fails if the plaintiff does not establish a primary violation of federal securities law. *Id.*

Plaintiffs alleged two claims in the SAC: a violation of Section 10(b)-5 and a violation of Section 20(a). But Plaintiffs' Section 10(b)-5 claim fails for the reasons discussed above. Accordingly, the court must also dismiss Plaintiffs' Section 20(a) claim since no primary violation of federal securities law survives the instant motion to dismiss.

### D. Dismissed with Prejudice

Finally, the court dismisses Plaintiffs' SAC with prejudice. A court need not grant leave to amend a complaint if amendment would be futile. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). The court retains broad discretion to deny leave to amend if the plaintiff previously amended the complaint. *Metzler*, 540 F.3d at 1072.

On August 8, 2016, the court issued an order identifying and explaining the inadequacies found in Plaintiffs' FAC. ECF No. 120. In filing the SAC, Plaintiffs failed to address the court's concerns and, therefore, failed once again to allege falsity, scienter, and loss causation under Rule 9(b) and the PSLRA. Because Plaintiffs have filed three versions of their allegations since the beginning of this matter and have had three years to hone their claims, the court now dismisses the SAC with prejudice.

///

///

///

**V.    Conclusion**

IT IS THEREFORE ORDERED that Defendants Scott Caldwell, Robert Buchan, Randy Buffington, and Stephen Jones' Motion to Dismiss the Second Consolidated Amended Complaint (ECF No. 126) is **GRANTED.**

IT IS FURTHER ORDERED that Plaintiffs' Second Consolidated Amended Complaint (ECF No. 125) is **DISMISSED WITH PREJUDICE.**

IT IS SO ORDERED.

DATED this 20th day of September, 2017.

LARRY R. HICKS
UNITED STATES DISTRICT JUDGE