MUCKLEROY LUNT, LLC
MARTIN A. MUCKLEROY
Nevada Bar No. 009634
6077 South Fort Apache Road, Suite 140
Las Vegas, Nevada 89148
Telephone: (702) 907-0097
Facsimile: (702) 938-4065
martin@muckleroylunt.com

*Counsel for Lead Plaintiff Andrey Slomnitsky
and Liaison Counsel for the Class*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re ALLIED NEVADA GOLD CORP., SECURITIES LITIGATION | Case No. 3:14-cv-00175-LRH-WGC |
| | CLASS ACTION |
| This Document Relates To: | LEAD PLAINTIFF'S MOTION FOR: (1) PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT; (2) |
| ALL ACTIONS. | CERTIFICATION OF THE CLASS FOR PURPOSES OF SETTLEMENT; (3) APPROVAL OF NOTICE TO THE CLASS; AND (4) SCHEDULING OF A SETTLEMENT HEARING; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................................1

II.    FACTUAL BACKGROUND .....................................................................................3

    A.    Background of the Litigation ....................................................................3

    B.    The Settlement Results From Extensive Negotiation and Mediation ..........5

III.    ARGUMENT .............................................................................................................6

    A.    The Proposed Settlement Warrants Preliminary Approval ........................6

        1.    The Proposed Settlement is the Result of Well Grounded, Good Faith, Arm's-Length Negotiations ..........................................8

        2.    The Relief Provided for the Class Is Adequate and Merits Issuance of Notice and a Hearing on Final Approval .....................9

        3.    The Settlement Has No Obvious Deficiencies as the Propose Plan of Allocation Treats Class Members Equitably ..............................................................................12

    B.    Class Certification for Settlement Purposes is Appropriate .....................12

        1.    The Class Satisfies the Requirements of Rule 23(a).....................13

        2.    Lead Plaintiff's Claims Satisfy the Prerequisites of Rule 23(b)(3) ......................................................................................16

IV.    THE FORM AND MANNER OF THE NOTICE TO THE CLASS SHOULD BE APPROVED ......................................................................................19

V.    CONCLUSION........................................................................................................22

1

## TABLE OF AUTHORITIES

2

Page

3

**CASES**

4

*Alberto v. GMRI, Inc.*,

5

    252 F.R.D. 652 (E.D. Cal. 2008) ...................................................................6

6

*Alonzo v. Maximus, Inc.*,

    275 F.R.D. 513 (C.D. Cal. 2011) ...............................................................14

7

*Amchem Prods., Inc. v. Windsor*,

8

    521 U.S. 591 (1997)..............................................................13, 17, 18, 9

9

*Berry v. Aria Resort & Casino, LLC*,

    No. 2:14-cv-1321-APG-VCF, 2015 U.S. Dist. LEXIS 17564

10

    (D. Nev. Jan. 27, 2015) ..........................................................................6, 8

11

*Booth v. Strategic Realty Tr. Inc.*,

12

    No. 13-cv-04921-JST, 2015 U.S. Dist. LEXIS 84143

    (N.D. Cal. June 28, 2015) ......................................................................9, 15

13

*Class Plaintiffs v. City of Seattle*,

14

    955 F.2d 1268 (9th Cir. 1992) ...................................................................6

15

*Flynn v. Sientra, Inc.*,

    No. CV 15-07548 SJO, 2017 U.S. Dist. LEXIS 223044

16

    (C.D. Cal. Jan. 23, 2017) .........................................................................13

17

*Hanlon v. Chrysler Corp.*,

18

    150 F.3d 1011 (9th Cir. 1998) ...................................................................3

19

*In re Cooper Cos. Inc. Sec. Litig.*,

    254 F.R.D. 628 (N.D. Cal. 2009)..........................................................14, 17

20

*In re Extreme Networks, Inc. Sec. Litig.*,

21

    No. 15-cv-04883-BLF, 2019 U.S. Dist. LEXIS 121886

22

    (N.D. Cal. July 22, 2019) ........................................................................14

23

*In re HP Sec. Litig.*,

    No. 3:12-CV-05980-CRB, 2015 U.S. Dist. LEXIS 97719

24

    (N.D. Cal. July 20, 2015).........................................................................22

25

*In re LinkedIn User Privacy Litig.*,

26

    309 F.R.D. 573 (N.D. Cal. 2015)..............................................................10

27

*In re Mercury Interactive Corp. Sec. Litig.*,

    618 F.3d 988 (9th Cir. 2010) ...................................................................21

28

1

2                                                                                        **Page**

3

4   *In re NVIDIA Corp. Derivative Litig.*,
        No. C-06-06110-SBA (JCS), 2008 U.S. Dist. LEXIS 117351
5       (N.D. Cal. Dec. 22, 2008) .......................................................................................6, 7, 8

6   *In re Omnivision Techs., Inc.*,
        559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................................6, 12
7
    *In re Oracle Sec. Litig.*,
8       No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593
        (N.D. Cal. June 16, 1994) ..............................................................................................12
9
    *In re THQ Inc. Sec. Litig.*,
10      No. CV 00-1783 AHM (Ex), 2002 U.S. LEXIS 7753
        (C.D. Cal. Mar. 22, 2002) .....................................................................................14, 17
11

12  *In re Zynga Sec. Litig.*,
        No. 12-cv-04007-JSC, 2015 U.S. Dist. LEXIS 145728
13      (N.D. Cal. Oct. 27, 2015) ...............................................................................................8

14  *Lane v. Facebook, Inc.*,
        696 F.3d 811 (9th Cir. 2012) ...................................................................................20, 21
15

16  *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v.*
        *Las Vegas Sands, Inc.*,
17      244 F.3d 1152 (9th Cir. 2001) ......................................................................................16

18  *Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
        688 F.2d 615 (9th Cir. 1982) ...........................................................................................8
19

20  *Santoro v. Aargon Agency, Inc.*,
        252 F.R.D. 675 (D. Nev. 2008).....................................................................................14
21

22  *Satchell v. Fed. Express Corp.*,
        No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066
23      (N.D. Cal. Apr. 13, 2007) ...............................................................................................8

24  *Schlagel v. Learning Tree Int'l.*,
        No. CV 98-6384 ABC (EX), 1999 U.S. Dist. LEXIS 2157
25      (C.D. Cal. Feb. 23, 1999).............................................................................................16

26  *Schmidt v. Red Rock Fin. Servs., LLC*,
        No. 2:12-cv-01773-JCM-PAL, 2013 U.S. Dist. LEXIS 149594
27      (D. Nev. Oct. 15, 2013)...............................................................................................14

28

Page

*Smith v. One Nev. Credit Union*,
   No. 2:16-cv-02156-GMN-NJK, 2018 U.S. Dist. LEXIS 157770
   (D. Nev. Sept. 16, 2018) ..........................................................................13

*Vanwagoner v. Siemens Indus.*,
   No. 2:13-cv-01303-KJM-EFB, 2014 U.S. Dist. LEXIS 67141
   (E.D. Cal. May 14, 2014) ............................................................................8

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-4(a)(7) ...........................................................................................19
   §78j(b) ..............................................................................................4, 10
   §78t(a) ..............................................................................................4, 10

Federal Rule of Civil Procedure
   Rule 23 .......................................................................................13, 20, 21
   Rule 23(a) ..........................................................................................12, 13
   Rule 23(a)(1) .........................................................................................13
   Rule 23(a)(2) .........................................................................................14
   Rule 23(a)(3) .........................................................................................15
   Rule 23(a)(4) ....................................................................................15, 16
   Rule 23(b) ............................................................................................12
   Rule 23(b)(3) ........................................................................13, 16, 17, 18
   Rule 23(e) .........................................................................................1, 5, 7
   Rule 23(e)(1)(B) ......................................................................................18
   Rule 23(e)(2) ......................................................................................6, 7
   Rule 23(e)(3) ..........................................................................................7
   Rule 23(h)(1) .........................................................................................19

**SECONDARY AUTHORITIES**

Alba Conte & Herbert B. Newberg,
   *Newberg on Class Actions* (4th ed. 2002)
   §11:45 ...................................................................................................6

*Manual for Complex Litigation* (3d ed. 1995)
   §11.25 ...................................................................................................7
   §30.41 ...................................................................................................7

*Manual for Complex Litigation* (4th ed. 2004)
   §13.14 ...................................................................................................6

Lead Plaintiff Andrey Slomnitsky ("Lead Plaintiff")[1] respectfully submits this memorandum of points and authorities in support of his motion pursuant to Federal Rule of Civil Procedure 23(e) for authorization to provide notice of the proposed settlement with defendants Scott Caldwell, Robert Buchan, Randy Buffington, and Stephen Jones (collectively, the "Defendants"), and to schedule a hearing for consideration of final certification of the Class (as defined below), approval of the proposed Settlement, approval of the proposed Plan of Allocation, consideration of Lead Plaintiff's Counsel's application for an award of attorneys' fees and litigation expenses, and consideration of an award to Lead Plaintiff for his time and expenses devoted to prosecution of the above-captioned action (the "Action").[2]

Specifically, through this motion, Lead Plaintiff respectfully requests that the Court: (1) ) conditionally certify the proposed Class; (2) preliminarily approve the Settlement; (3) approve the form and manner of giving notice of the Settlement to the Class; and (4) schedule the Settlement Hearing and deadlines related thereto.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

Lead Plaintiff and Defendants (the "Parties") have reached an agreement to settle this securities class action on the terms set forth in the Stipulation.  The proposed Settlement will provide a substantial monetary benefit to the Class of $14,000,000 in cash.  The Settlement, if approved, will resolve all claims asserted against the Defendants in this Action.

---

[1]     By Order dated November 7, 2014, the Court appointed the Lead Plaintiff, and Brower Piven, A Professional Corporation ("Brower Piven"), was appointed Lead Counsel. ECF No. 59.

[2]     Capitalized terms not defined herein are as stated in the Stipulation of Settlement, dated January 24, 2020 ("Stipulation"), attached hereto.

- 1 -

The Settlement is the culmination of more than six years of litigation and was reached at a time when the Parties understood the strengths and weaknesses of their respective positions.   Specifically, Lead Plaintiff's Counsel conducted an extensive investigation into the claims; filed a detailed consolidated complaint; a second consolidated complaint; negotiated an agreement in the bankruptcy court in connection with the Chapter 11 proceedings for Allied Nevada Gold Corporation ("Allied" or the "Company") with respect to preserving documents and responding to discovery requests in the future; briefed and argued the oppositions to Defendants' motions to dismiss before the District Court; successfully argued and obtained reversal of the District Court dismissal of the Action before the Ninth Circuit Court of Appeals; and propounded wide-reaching discovery on Defendants. Additionally, Lead Plaintiff's Counsel reviewed tens of thousands of pages of documents produced by numerous third parties that Lead Plaintiff subpoenaed, as well as documents produced by Defendants.  Lead Counsel also engaged in extensive consultations with their economics, financial, industry and damages experts before, during and after the negotiations that led to the proposed Settlement.

The Parties engaged in extensive arm's-length settlement negotiations and participated in mediation under the supervision of Jed Melnick, Esquire, an experienced and highly regarded mediator.[3]   Following mediation, the Parties reached the Settlement. Thereafter, the Parties negotiated the terms of the Stipulation and implementing exhibits now before the Court for preliminary approval. Lead Plaintiff and Lead Plaintiff's Counsel – based upon their evaluation of the facts and applicable law and their recognition of the substantial risk and expense of continued litigation – submit that the proposed Settlement is

---

[3]   The Parties previously participated in mediation in Canada, which included the plaintiffs in the Canadian Action, on December 15, 2016, but no settlement was reached.

4817-5975-3646.v1

in the best interests of the Class and will provide an immediate meaningful recovery for the Class.

Prior to the Settlement Hearing, Lead Plaintiff will submit detailed papers supporting the proposed Settlement and will ask the Court to determine whether the Settlement is fair, reasonable, and adequate.  At this time, however, Lead Plaintiff requests only that the Court grant preliminary approval of the Settlement so that notice may be provided to the Class. Specifically, Lead Plaintiff requests that the Court enter the proposed Order Granting Preliminary Approval of Settlement, Granting Conditional Class Certification, and Providing for Notice ("Preliminary Approval Order"), submitted herewith (and as Exhibit A to the Stipulation), which, among other things, will: (i) preliminarily approve the Settlement and provisionally certify the Class; (ii) approve the form and content of the Notice, Proof of Claim form and Summary Notice, attached as Exhibits A-1, A-2 and A-3 to the Stipulation; and (iii) schedule the Settlement Hearing and set a schedule and procedures for settlement-related events, including: disseminating the notices; requesting exclusion; objecting to the Settlement; and submitting papers in support of final approval of the Settlement.

In short, given the immediate and substantial total benefit of $14 million and the risks in establishing Defendants' liability and proving damages for the entire Class, Lead Plaintiff respectfully submits that the Settlement is not only fair, reasonable, and adequate, but represents an outstanding recovery, as described below and as will be demonstrated in papers submitted in connection with seeking final approval of the Settlement.

## II.  FACTUAL BACKGROUND

### A.  Background of the Litigation

The initial complaint was filed in the Court by plaintiff Movses Marjanian on April 3, 2014.  ECF No. 1.  A subsequent complaint was filed in the Court on April 29, 2014 by

4817-5975-3646.v1

plaintiff Janet Martinez.  *See Martinez v. Allied Nevada Gold Corp., et al.*, Case No. 2:14-cv-0650, ECF No. 1.  On November 7, 2014, the Court consolidated the actions and appointed the Lead Plaintiff and Lead and Liaison Counsel.  ECF No. 59.

Lead Plaintiff's Consolidated Amended Complaint for Violations of the Federal Securities Laws (the "Complaint") was filed on May 1, 2015.  ECF No. 98.  It alleged that Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 by issuing materially false and misleading statements and omitting material information concerning Allied's business and operations.[4]

On September 29, 2015, Defendants moved to dismiss the Complaint.  ECF No. 103.  Lead Plaintiff filed his opposition to the motion on December 15, 2015, ECF No. 109, and Defendants filed their reply brief on February 1, 2016.  ECF No. 110.  The Court heard oral argument on the motion to dismiss on March 30, 2016, ECF No. 117, and on August 8, 2016, the Court issued its Order Granting Defendants' Motion to Dismiss Without Prejudice.  ECF No. 120.

Lead Plaintiff filed his Second Consolidated Amended Complaint for Violations of the Federal Securities Laws (the "Amended Complaint") on November 3, 2016.  ECF No. 125.  Defendants moved to dismiss the Amended Complaint on January 25, 2017.  ECF No. 126.  Lead Plaintiff filed his opposition brief on March 22, 2017, ECF No. 132, and Defendants filed their reply on May 17, 2017.  ECF No. 135.  On September 20, 2017, the Court issued an Order dismissing the Amended Complaint with prejudice.  ECF No. 136.

Lead Plaintiff filed a Notice of Appeal on October 16, 2017.  ECF No. 137.  The Parties fully briefed Lead Plaintiff's appeal, *see* Case No. 17-17110 (9th Cir.) ("Appeal

---

[4]    After Allied filed for bankruptcy protection on March 10, 2015, the Company was dropped as a defendant in the Litigation.

- 4 -

ECF"), at Appeal ECF Nos. 11, 16, 21, and oral argument was held on November 15, 2018.

Appeal ECF No. 34.  On November 29, 2018, the Ninth Circuit Court of Appeals issued an

opinion reversing dismissal of the Amended Complaint and remanding the Litigation to the

Court.  Appeal ECF No. 36.  The Ninth Circuit denied Defendants' petition for rehearing and

rehearing *en banc* on March 5, 2019.  Appeal ECF No. 44.

Lead Plaintiff, through Lead Plaintiff's Counsel, conducted an in-depth investigation

of the claims and underlying events relating to the Action. This investigation included,

among other things, the review and analysis of tens-of-thousands of pages of publicly

available information concerning Allied, including articles and online publications;

regulatory filings made with the SEC; and securities analyst reports.  Lead Plaintiff's

Counsel also reviewed and digested hundreds of thousands of pages of documents produced

pursuant to Lead Plaintiff's subpoenas as well as documents produced by Defendants.

Further, Lead Plaintiff also consulted with experts regarding industry-related matters,

potential recoverable damages, loss causation and Defendants' potential defenses to Lead

Plaintiff's Class-wide damage estimates.

### B.    The Settlement Results From Extensive Negotiation and Mediation

The Settlement is the result of arm's-length discussions and negotiations, which

included two face-to-face mediation sessions.  Prior to each mediation, the Parties exchanged

detailed mediation statements setting forth their respective positions on liability and

damages.  The first mediation in Canada was not successful.  However, following the

mediation with Jed Melnick, Esquire on October 10, 2019, an agreement-in-principle to

settle the Action was reached.  Thereafter, Lead Plaintiff's Counsel and Defendants' Counsel

negotiated the specific terms of the Settlement as set forth in the Stipulation and related

4817-5975-3646.v1

1  exhibits.

2  **III.    ARGUMENT**

3    **A.    The Proposed Settlement Warrants Preliminary Approval**

4    Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise

5  of claims brought on a class basis.  Approval of a proposed settlement is within the Court's

6  discretion to be exercised in accordance with public policy that strongly favors pretrial

7  settlement of complex class action lawsuits.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d

8  1268, 1276 (9th Cir. 1992); *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA

9  (JCS), 2008 U.S. Dist. LEXIS 117351, at *6-*7 (N.D. Cal. Dec. 22, 2008).

10

11    The court must determine whether the terms of the proposed settlement warrant

12  preliminary approval.  *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008)

13  ("Procedurally, the approval of a class action settlement takes place in two stages.  In the

14  first stage of the approval process, the court preliminarily approve[s] the Settlement pending

15  a fairness hearing, temporarily certifie[s] the Class . . . , and authorize[s] notice to be given

16  to the Class.") (internal citations omitted); *see also Berry v. Aria Resort & Casino, LLC*, No.

17  2:14-cv-1321-APG-VCF, 2015 U.S. Dist. LEXIS 17564, at *4 (D. Nev. Jan. 27, 2015);

18  *Manual for Complex Litigation* §13.14 (4th ed. 2004).  A court, "in evaluating the agreement

19  of the parties, is not to reach the merits of the case or to form conclusions about the

20  underlying questions of law or fact."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036,

21  1041 (N.D. Cal. 2008); *see also* Alba Conte & Herbert B. Newberg, *Newberg on Class*

22  *Actions* §11:45 (4th ed. 2002) ("There is no precise formula for what constitutes sufficient

23  evidence to enable the court to analyze intelligently the contested questions of fact.  It is

24  clear that the court need not possess evidence to decide the merits of the issue, because the

25  compromise is proposed in order to avoid further litigation.").

26

27

28

- 6 -

The amended Rule 23(e)(2) requires the Court, in considering whether the settlement is fair, reasonable and adequate, to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3)[5]; and
>
> (D) the proposal treats class members equitably relative to each other.

Fed R. Civ. P. 23(e)(2).  Preliminary approval is warranted so long as:

> the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

Conte & Newberg, *supra*, §11.25 (quoting *Manual for Complex Litigation* §30.41 (3d ed. 1995)); *see also NVIDIA*, 2008 U.S. Dist. LEXIS 117351, at *8 (quoting, with approval, the above language).  As "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes," it must be remembered in evaluating a

---

[5]     Lead Plaintiff and Defendants have entered into a standard supplemental agreement which provides that if Class Members opt out of the proposed Settlement such that the number of Allied shares represented by such opt outs equals or exceeds a certain amount, Defendants have the option to terminate the proposed Settlement.  *See* Stipulation at ¶7.4.

settlement that any settlement involves concessions by each of the settling parties. *NVIDIA*, 2008 U.S. Dist. LEXIS 117351, at *11 (internal quotations omitted).  Here, as discussed in detail below, preliminary approval of the Settlement is warranted.[6]

**1.    The Proposed Settlement Is the Result of Well Grounded, Good Faith, Arm's-Length Negotiations**

A presumption of fairness applies to a proposed class settlement when the settlement is the product of arm's-length negotiations conducted by experienced counsel knowledgeable in complex class litigation.  *See Vanwagoner v. Siemens Indus.*, No. 2:13-cv-01303-KJM-EFB, 2014 U.S. Dist. LEXIS 67141, at *19 (E.D. Cal. May 14, 2014); *Berry*, 2015 U.S. Dist. LEXIS 17564, at *14.   In this case, the Settlement is the product of such rigorous negotiations.  The Parties took part in extensive arm's-length negotiations, including during two separate face-to-face mediations, including the latter before Jed Melnick, Esquire, an experienced mediator who has assisted in resolving numerous complex class actions.  *See, e.g.*, *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").  Indeed, "[t]he use of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement."  *In re Zynga Sec. Litig.*, No. 12-cv-04007-JSC, 2015 U.S. Dist. LEXIS 145728, at *33 (N.D. Cal. Oct. 27, 2015) (citations omitted).

---

[6]      A final approval determination is based on an analysis of nine factors established in *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). The factors are: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.  *Id.*

Lead Plaintiff's Counsel's investigation into the facts and merits of the claims and defenses further supports a finding that the process leading to the proposed Settlement was thorough and well-informed.  Lead Plaintiff's Counsel did an extensive review of publicly-available information concerning Allied and Defendants and the claims asserted, including articles, online publications, SEC filings, and analyst reports.  Lead Plaintiff's Counsel also thoroughly researched Lead Plaintiff's legal claims, filed two voluminous complaints, defended against motions to dismiss, briefed the factual and legal issues on appeal, engaged in discovery with Defendants and third parties, and consulted with experts.  Thus, Lead Plaintiff's Counsel and Lead Plaintiff had a clear and well-developed understanding of the strengths and weaknesses of their case before entering into negotiations and agreeing to the proposed Settlement.

> ### 2.   The Relief Provided for the Class Is Adequate and Merits Issuance of Notice and a Hearing on Final Approval

Although Lead Plaintiff and Lead Counsel believe that the claims asserted in the Action are meritorious and that the Class would ultimately prevail at trial, continued litigation against Defendants posed risks that made any recovery for the Class uncertain. The fairness and adequacy of the Settlement is underscored by consideration of the obstacles that the Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the Action.  *See Booth v. Strategic Realty Tr. Inc.*, No. 13-cv-04921-JST, 2015 U.S. Dist. LEXIS 84143, at *20-*22 (N.D. Cal. June 28, 2015).

If the Action had continued, even assuming that Lead Plaintiff had prevailed on all liability issues at trial (which was by no means a certainty considering Defendants' steadfast challenges to falsity and scienter every step of the way), Defendants would still have the opportunity to persuade a jury that any losses were attributable to causes other than

- 9 -

Defendants' misstatements or omissions.  There is no doubt that both sides would have had to present complex and nuanced information to a jury that would include a "battle of the experts" on complex issues, including matters pertaining to heap leach mining, loss causation and damages.

Moreover, the directors' and officers' ("D&O") insurance coverage is a wasting asset as it pays legal fees of the Defendants, as well as providing coverage for the claims asserted in the Action.  By continuing with the Litigation, each day that the Action was not settled would take away money available for the Class for settlement.  Moreover, the Action was complicated by the fact that Allied had been in bankruptcy and is not a defendant in the Action.

These were but a few of the unique hurdles Lead Plaintiff would have to overcome to obtain a recovery for the Class.  When considering the Settlement, Lead Plaintiff's Counsel weighed the certainty of an immediate cash recovery for the Class against the significant legal challenges Lead Plaintiff faced and the wasting insurance coverage.  There can be no doubt that because the Action is settling at this time, the litigants have been spared the delay and expense of continued litigation, including further appeals.  Indeed, conducting further discovery, by itself, would be complex, lengthy and certainly expensive.  Many months of the Parties' (and the District Court's) time and significant resources have been spared.  *See, e.g.*, *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("'Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'") (citation omitted).

Lead Plaintiff has obtained a Settlement that, based on his damage expert's estimates, taking into account the factual risks to proving the existence of claims of Class Members,

generally accepted principles of loss causation, and the statutory measures of damages permitted under §§10(b) and 20(a) of the Exchange Act of 1934, will result, before attorneys' fees and expenses, in participating Class Members recovering almost 15% of the estimated most likely recoverable damages, assuming complete victory by Lead Plaintiff on the merits and collectability of an ultimate judgment after the inevitable appellate proceedings.   Under these circumstances, the proposed Settlement is not only fair, reasonable, and adequate, but an outstanding result.

Additionally, the proposed method of distributing relief to the Class, including the method of processing Class Members' claims is adequate and presents no unusual issues or problems.   The administration is planned and will be executed like hundreds (if not thousands) before it in similar federal securities cases. Lead Counsel is highly experienced in the administration of securities class action settlements.   Lead Counsel has also retained a leading claims administration firm, one with decades of experience administering and processing claims in settlements of cases of this type as well as far more complex settlements.   Claims will be processed based on reliable documentary evidence submitted and calculated in accordance with the Plan of Allocation.

Finally, the matter of attorneys' fees and payment of expenses is wholly separate from the Settlement and subject to the Court's oversight and approval during the Settlement Hearing – after the appropriate briefing by Lead Plaintiff's Counsel and an opportunity for Class Members' review.[7]   As stated in the Notice, Lead Plaintiff's Counsel intend to request

---

[7]      At the time Lead Plaintiff's Counsel present their motion for final approval of the Settlement, Lead Plaintiff's Counsel will discuss other unique risks that this Action entailed and provide additional details on all of those risks confronting Lead Plaintiff's success on the merits and ultimate collectability of any judgment they might have obtained.

- 11 -

fees not to exceed 33 1/3% of the Settlement Fund, plus interest, to be paid at the time the Court makes its award, plus litigation expenses.

### 3. The Settlement Has No Obvious Deficiencies as the Proposed Plan of Allocation Treats Class Members Equitably

The Settlement has no obvious deficiencies and does not improperly grant preferential treatment to the Lead Plaintiff or segments of the Class. The $14,000,000 recovery constitutes a significant and certain benefit for the Class. The Lead Plaintiff will receive a distribution from the Net Settlement Fund in accordance with the Plan of Allocation in the same manner as distributions to all other Class Members. The Plan of Allocation will allocate the recovery on a *pro rata* basis based on the number of affected shares of each Authorized Claimant. "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *Omnivision*, 559 F. Supp. 2d at 1045 (citing *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *3-*4 (N.D. Cal. June 16, 1994)). In sum, nothing in the course of the settlement negotiations or the terms of the Settlement itself discloses grounds to doubt its fairness. Rather, the substantial recovery to the Class, the arm's length nature of the negotiations, and the participation of sophisticated counsel throughout the Action support a finding that the proposed Settlement is, on its face, sufficiently fair, reasonable, and adequate to justify notice to the Class and a hearing on final approval. Accordingly, the Parties request preliminary approval of the Settlement.

### B. Class Certification for Settlement Purposes Is Appropriate

The Parties have stipulated to certification of a Class as described in the Notice. The proposed Class is defined as follows:

All Persons who purchased Allied common stock in the United States

1
2
3
4
5

or on a securities exchange in the United States during the Class Period. Excluded from the Class are:  (i) Allied, its predecessors, successors, and subsidiaries; (ii) Defendants; (iii) the officers and directors of Allied during the Class Period; (iv) members of the immediate families of any Defendant; (v) any firm, trust, corporation, or entity in which any Defendant has a controlling interest; and (vi) the heirs, successors, and assigns of any excluded Person from the Class pursuant to Paragraph 1.5 of the Stipulation. Also excluded from the Class is any Class Member that validly and timely requests exclusion in accordance with the requirements set by the Court.

6
7
8
9
10
11
12
13
14
15
16
17
18
19

The Ninth Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Smith v. One Nev. Credit Union*, No. 2:16-cv-02156-GMN-NJK, 2018 U.S. Dist. LEXIS 157770, at *25 (D. Nev. Sept. 16, 2018).  A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and Rule 23(b).  *See Flynn v. Sientra, Inc.*, No. CV 15-07548 SJO (RAOx), 2017 U.S. Dist. LEXIS 223044, at *12-*13 (C.D. Cal. Jan. 23, 2017).  Nevertheless, the manageability concerns of Rule 23(b)(3) are not at issue in this context.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").  Here, the proposed Class meets all the requirements of Rule 23, there is no abuse of the class action device, and the Settlement is fair, reasonable, and subject to the Court's approval.

20
21
22

As explained below, certification is appropriate because the proposed Class meets all the requirements of Rule 23(a) and Rule 23(b)(3).

23

### 1.    The Class Satisfies the Requirements of Rule 23(a)

24
25
26
27
28

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the

1    interests of the class.  Fed. R. Civ. P. 23(a).  *See Schmidt v. Red Rock Fin. Servs., LLC*, No.

2    2:12-cv-01773-JCM-PAL, 2013 U.S. Dist. LEXIS 149594, at *6-*8 (D. Nev. Oct. 15, 2013).

3                   **a.      Class Members Are Too Numerous to Be Joined**

4           Certification under Rule 23(a)(1) is appropriate where a class contains so many

5    members that joinder of all would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  "[I]n

6    general, courts have held that joinder is practicable where there are less than 25 parties, and

7    impracticable where there are more than 35."  *In re THQ Inc. Sec. Litig.*, No. CV 00-1783

8    AHM (Ex), 2002 U.S. LEXIS 7753, at *9-*10 (C.D. Cal. Mar. 22, 2002).  Here, the

9    numerosity requirement of Rule 23(a)(1) is satisfied because the number of Class Members

10   is likely to be in the hundreds of thousands.  During the Class Period, Allied's common stock

11   was actively traded on the NYSE MKT and TSX.  Thus, Class Members are sufficiently

12   numerous that joinder of all members would be impracticable.  *See In re Cooper Cos. Inc.*

13   *Sec. Litig.*, 254 F.R.D. 628, 634 (N.D. Cal. 2009) (court may infer that "when a corporation

14   has millions of shares trading on a national exchange" it is likely that "thousands of people

15   made such purchases").

16

17                  **b.      There Are Common Questions of Law and Fact**

18          Rule 23(a)(2) requires the existence of at least one question of law or fact common to

19   the class.  *See Santoro v. Aargon Agency, Inc.*, 252 F.R.D. 675, 680 (D. Nev.

20   2008) (holding that "'one significant issue common to the class may be sufficient to warrant

21   certification'") (citations omitted); *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 520 (C.D. Cal.

22   2011).  Federal securities cases easily meet the commonality requirement, which is satisfied

23   where putative class members have been injured by similar material misrepresentations and

24   omissions.  *See In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 U.S.

25   Dist. LEXIS 121886, at *16 (N.D. Cal. July 22, 2019).

26

27

28

1   Here, the claims alleged presented many questions of law and fact that are common

2   to all Class Members, including: (i) whether the federal securities laws were violated by

3   Defendants' acts and omissions as alleged in the Amended Complaint; (ii) whether

4   statements made by Defendants to the investing public during the relevant period

5   misrepresented material facts about Allied; (iii) whether the market price of Allied common

6   stock during the relevant period was artificially inflated due to the material

7   misrepresentations and failures to disclose material facts alleged in the Amended Complaint;

8   and (iv) the extent to which Class Members have sustained damages and the proper measure

9   of damages.  Because these questions of law and fact are common to all Class Members, the

10   commonality requirement of Rule 23(a)(2) is met.

11

12              c.      **Lead Plaintiff's Claims Are Typical of Those of**
                        **Class Members**
13

14   Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the

15   claims of the class.  Fed. R. Civ. P. 23(a)(3).  Typicality is established where the claims of

16   the named plaintiffs arise from the same practice or course of conduct that gives rise to the

17   claims of the proposed class members.  *See Booth*, 2015 U.S. Dist. LEXIS 84143, at *10-

18   *11.  Here, like each Class Member, Lead Plaintiff purchased Allied common stock and was

19   similarly affected by Defendants' allegedly wrongful conduct in violation of the federal

20   securities laws.  Thus, Lead Plaintiff's claims arise from the same course of conduct that

21   gives rise to the claims of every other Class Member who purchased Allied common stock.

22   Lead Plaintiff claims economic injury from the same alleged misrepresentations and

23   omissions and under the same legal theories as every other Class Member.  As such, Lead

24   Plaintiff satisfies the typicality requirement.

25

26

27

28

4817-5975-3646.v1

1
2

**d.      Lead Plaintiff Has and Will Continue to Fairly
and Adequately Protect the Interests of the Class**

3
4

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately

5

protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The Ninth Circuit has held that

6

representation is 'adequate' where (1) counsel for the class is qualified and competent, (2)

7

the representatives' interests are not antagonistic to the interests of absent class members,

8

and (3) it is unlikely that the action is collusive." *Schlagel v. Learning Tree Int'l.*, No. CV

9

98-6384 ABC (EX), 1999 U.S. Dist. LEXIS 2157, at *6 (C.D. Cal. Feb. 23, 1999) (citations

10

omitted).

11

Lead Plaintiff and the Class share the common objective of maximizing their

12

recovery, and no conflict exists between Lead Plaintiff and Class Members.  Lead Plaintiff's

13

interests are directly aligned with the interests of the Class who collectively purchased Allied

14

common stock and were affected by the same false and/or misleading statements and

15

omissions.  Lead Plaintiff has also demonstrated his commitment to monitor and supervise

16

the prosecution of this Action on behalf of the interests of the Class.  Lead Plaintiff has

17
18

retained experienced counsel, received regular status updates, and participated in strategic

19

decisions.  Moreover, there is no doubt that Lead Plaintiff's Counsel, who have been

20

prosecuting securities class actions for years and have proven track records of success in

21

complex securities class actions such as this, are qualified and capable of prosecuting this

22

Action.  Therefore, Rule 23(a)(4) is satisfied.

23
24

**2.      Lead Plaintiff's Claims Satisfy the Prerequisites of Rule
23(b)(3)**

25

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of

26

law or fact common to class members predominate over any questions affecting only

27

individual members, and that a class action is superior to other available methods for fairly

28

4817-5975-3646.v1

and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) is "designed to secure judgments binding all class members save those who affirmatively elected to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Amchem*, 521 U.S. at 614-15. Certification of the Class serves these purposes.

### a.    Common Legal and Factual Questions Predominate

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," there is clear justification for class treatment.  *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).  As the Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud.  *See Amchem*, 521 U.S. at 625; *see also THQ*, 2002 U.S. Dist. LEXIS 7753, at *30; *Cooper*, 254 F.R.D. at 639 ("District courts in the Ninth Circuit have held that when plaintiffs plead a fraud-on-the-market theory, questions of whether misleading conduct occurred, and whether that conduct occurred with fraudulent intent, predominate over other questions.").

Here, the same alleged course of conduct by the Defendants forms the basis of all Class Members' claims.  There are numerous common issues relating to the Class-wide claims against Defendants that predominate over any individualized issues:

    a.    whether the federal securities laws were violated by Defendants' acts;

    b.    whether statements made by Defendants to the investing public misrepresented material facts or omitted to disclose material information that, under the circumstances, would render the statements made not false and misleading about Allied;

c.      whether the market prices of Allied common stock were artificially inflated or distorted because of Defendants' conduct; and

d.      whether Class Members have sustained damages and the proper measure of damages.

The predominance requirement of Rule 23(b)(3) is, therefore, satisfied.

### b.      A Class Action Is the Superior Means to Adjudicate

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3).

Considering these factors, this consolidated class action is clearly "superior to other available methods for fairly and efficiently adjudicating" the federal securities law claims of the large number of investors who purchased or otherwise acquired Allied common stock during the Class Period. Further, the scope and complexity of Lead Plaintiff's claims against the Defendants, together with the high cost of individualized litigation, make it unlikely that, absent class certification, the vast majority of the Class Members would be able to obtain relief. Finally, any potential difficulties of managing the class action through litigation and trial need not be considered here. As the Supreme Court explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the

- 18 -

proposal is that there be no trial." 521 U.S. at 620.  Accordingly, the requirements of Rule 23(b)(3) are satisfied.

## IV.      THE FORM AND MANNER OF THE NOTICE TO THE CLASS SHOULD BE APPROVED

Federal Rule of Civil Procedure 23(e)(1)(B) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal" (*i.e.*, the proposed Settlement).  Fed. R. Civ. P. 23(e)(1)(B).  Here, the Parties negotiated the form of the Notice to be disseminated to all persons who fall within the definition of the Class and whose names and addresses can be identified with reasonable effort from or through Defendants' records. In addition, the Claims Administrator[8] will send the Notice to entities that commonly hold securities in "street name" as nominees for the benefit of their customers who are the beneficial purchasers of the common stock.  The Parties further propose to supplement the mailed Notice with a Summary Notice transmitted three (3) separate times over a national business-oriented newswire.  The Notice and Summary Notice are attached to the Stipulation as Exhibits A-1 and A-3.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1).  Here, the Notice satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Lead Counsel will apply to the Court for an award of a reasonable percentage of the Settlement Fund not to exceed, in the aggregate, third-three and one third percent (33 1/3%) of the Settlement Fund as attorneys' fees, plus Lead Plaintiff's Counsel's reasonable litigation expenses.

---

[8]      The proposed Claims Administrator is Epiq Class Action and Claims Solutions, Inc. *See generally* www.epiqglobal.com/en-us.

1    Furthermore, in securities class actions, the PSLRA requires the notice of settlement

2    to include: (1) "[t]he amount of the settlement proposed to be distributed to the parties to the

3    action, determined in the aggregate and on an average per share basis;" (2) "[i]f the parties

4    do not agree on the average amount of damages per share that would be recoverable if the

5    plaintiff prevailed on each claim alleged under this title, a statement from each settling party

6    concerning the issue or issues on which the parties disagree;" (3) "a statement indicating

7    which parties or counsel intend to make . . . an application [for attorneys' fees or costs], the

8    amount of fees and costs that will be sought (including the amount of such fees and costs

9    determined on an average per share basis), and a brief explanation supporting the fees and

10   costs sought;" (4) "[t]he name, telephone number, and address of one or more representatives

11   of counsel for the plaintiff class who will be reasonably available to answer questions from

12   class members;" and (5) "[a] brief statement explaining the reasons why the parties are

13   proposing the settlement." 15 U.S.C. §78u-4(a)(7).

14

15        The proposed Notice describes the Settlement and sets forth the aggregate amount of

16   the Settlement Fund ($14,000,000.00) and the estimated average recovery; states the Parties'

17   disagreement over liability and damages; sets out the amount of attorneys' fees and expenses

18   that Lead Plaintiff's Counsel intend to seek in connection with final settlement approval; and

19   describes the Plan of Allocation.  In addition, the Notice explains the nature, history, and

20   status of the Action, sets forth the definition of the Class, states the Class's claims and issues,

21   discusses the rights of Persons that fall within the definition of the Class, and summarizes the

22   reasons the Parties are proposing the Settlement.

23

24        Further, for those Class Members who wish to participate in the Settlement, the

25   Notice and the Proof of Claim provide instructions on the process for completing and

26

27

28

- 20 -

submitting the Proof of Claim.  The Notice also provides the name and mailing address for the Claims Administrator, Lead Counsel, and Defendants' Counsel.  The Summary Notice also informs Class Members that copies of the Notice and Proof of Claim may be obtained by writing the Claims Administrator or by accessing the documents on the website of the Claims Administrator.  The Notice also provides a toll-free phone number and website address for Class Members to obtain additional information, and Lead Counsel will maintain a website (through the Claims Administrator) where all Class Members can review the key documents in the Action, and to obtain additional copies of the Notice and Proof of Claim form.  The Preliminary Approval Order also provides that Lead Plaintiff's papers in support of the proposed Settlement, the request for attorneys' fees and reimbursement of expenses, and Lead Plaintiff's request for reimbursement of his time and expenses incurred in prosecuting this Action will be filed no less than 35 days before the deadline for Class Members to object to any of those requests for relief or request exclusion from the Class to allow Class Members to review those papers before deciding to exercise, if they should choose, one of those decisions.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F. 3d 988, 995 (9th Cir. 2010).  Finally, the Notice sets forth the date, time, and place of the Settlement Hearing, along with the procedures and deadlines for objecting to or seeking exclusion from the Settlement.

Accordingly, the Notice and Summary Notice fairly apprise the prospective Class Members  of the terms of the proposed Settlement and their options.  The manner of providing notice, which includes individual notice by mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23.  *See Lane v. Facebook, Inc*., 696 F.3d

4817-5975-3646.v1

811, 826 (9th Cir. 2012); *In re HP Sec. Litig.*, No. 3:12-CV-05980-CRB, 2015 U.S. Dist. LEXIS 97719, at \*10 (N.D. Cal. July 20, 2015) (finding the procedures for notice, including mailing individual notice and publication notice satisfy Rule 23, the PSLRA, and constitute the best notice practicable).

## V.       CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order that will: (i) preliminarily approve the Settlement; (ii) certify the Class for settlement purposes only; (iii) approve the form and manner of giving notice of the Settlement to the Class; and (iv) schedule a date and time for the Settlement Hearing to consider approval of the Settlement and related matters following an opportunity for Class Members to be heard.

DATED: February 10, 2020                    Respectfully submitted,

MUCKLEROY LUNT, LLC

*/s/ Martin A. Muckleroy*
Martin A. Muckleroy (SBN 9634)
6077 South Fort Apache Road, Suite 140
Las Vegas, Nevada 89148
Telephone: (702) 907-0097
Facsimile: (702) 938-4065
martin@muckleroylunt.com

*Counsel for Lead Plaintiff Andrey Slomnitsky*
*and Liaison Counsel for the Class*

BROWER PIVEN
   A Professional Corporation
David A.P. Brower (admitted *pro hac vice*)
136 Madison Avenue, 5th Floor
New York, New York 10016
Telephone: (212) 501-9000
Facsimile: (212) 501-0300|
brower@browerpiven.com

- 22 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BROWER PIVEN
   A Professional Corporation
Charles J. Piven (admitted *pro hac vice*)
3704 North Charles Street, #1301
Baltimore, Maryland 21218
Telephone: (410) 332-0030
Facsimile: (410) 685-1300
piven@browerpiven.com

*Counsel for Lead Plaintiff Andrey Slomnitsky
and Lead Counsel for the Class*

ROBBINS GELLER RUDMAN
   & DOWD LLP
Samuel H. Rudman (admitted *pro hac vice*)
Joseph Russello (admitted *pro hac vice*)
William J. Geddish (admitted *pro hac vice*)
58 South Service Road, Suite 200
Melville, New York 11747
Telephone:  (631) 367-7100
Facsimile: (631) 367-1173
srudman@rgrdlaw.com
jrussello@rgrdlaw.com
WGeddish@rgrdlaw.com

*Additional Counsel for Plaintiff and the Class*

- 23 -

4817-5975-3646.v1

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that the foregoing document was filed on February 10, 2020, and will

3  be sent electronically to the registered participants as identified on the Notice of Electronic

4  Filing (NEF), and paper copies will be sent to those indicated as non-registered participants

5  on February 10, 2020.

6

7

8                                    _/s/ Martin A. Muckleroy_
                                      Martin A. Muckleroy
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28