BROWER PIVEN
  A Professional Corporation
DAVID A.P. BROWER (Admitted *Pro Hac Vice*)
136 Madison Avenue, 5th Floor
New York, New York 10016
Telephone:  212/501-9000
Facsimile:   (212) 501-0300
brower@browerpiven.com

*Lead Counsel for the Class*

MUCKLEROY LUNT, LLC
MARTIN A. MUCKLEROY
Nevada Bar No. 009634
6077 South Fort Apache Road, Suite 140
Las Vegas, Nevada 89148
Telephone: (702) 907-0097
Facsimile: (702) 938-4065
martin@muckleroylunt.com

*Counsel for Lead Plaintiff Andrey Slomnitsky
and Liaison Counsel for the Class*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In re ALLIED NEVADA GOLD CORP. SECURITIES LITIGATION | Case No. 3:14-cv-00175-LRH-WGC |
| | CLASS ACTION |
| This Document Relates To: | MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND APPROVAL OF THE PLAN OF ALLOCATION |
| ALL ACTIONS. | |

# TABLE OF CONTENTS

Page

I.     PRELIMINARY STATEMENT ................................................................... 1

II.    PROCEDURAL AND FACTUAL BACKGROUND ................................... 3

III.   STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
       SETTLEMENTS ......................................................................................... 4

       A.    The Proposed Settlement Satisfies the Requirements of FED. R.
             CIV. P. 23(e)(2 ............................................................................... 7

             1.    Plaintiff and Its Counsel Have Adequately Represented the
                   Class ..................................................................................... 7

             2.    The Proposed Settlement Was Negotiated at Arm's-Length
                   and Was Not the Product of Collusion ................................ 7

             3.    The Proposed Settlement Is Adequate in Light of the Costs,
                   Risk and Delay of Trial and Appeal .................................... 8

                   a.    Continued Litigation Posed Substantial Risks In
                         Establishing Liability ................................................ 10

                   b.    Continued Litigation Posed Substantial Risks In
                         Proving Damages ...................................................... 11

                   c.    Risk to the Class on Appeal ..................................... 13

                   d.    Balancing the Certainty of an Immediate Recovery
                         Against the Expense and Likely Duration of
                         Protracted Litigation Favors Settlement .................. 14

             4.    The Proposed Method for Distributing Relief Is Effective ........... 15

             5.    Attorneys' Fees .................................................................... 16

             6.    The Proposed Plan of Allocation Treats Class Members
                   Equitably .............................................................................. 17

       B.    The Remaining Ninth Circuit Factors Are Satisfied .................... 17

             1.    Discovery Completed and Stage of the Proceedings ........... 17

             2.    The Recommendation of Experienced Counsel Heavily
                   Favors Approval of the Settlement ...................................... 18

       C.    Reaction of the Class Supports Approval of the Settlement ........ 19

             1.    The Settlement Amount ........................................................ 20

IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND

| | | Page |
|---|---|---|
| | SHOULD BE APPROVED BY THE COURT | 23 |
| V. | CONCLUSION | 24 |

# TABLE OF AUTHORITIES

Page

**CASES**

*Adoma v. Univ. of Phoenix, Inc.*,
No. 10-0059 LKK/GGH, 2012 U.S. Dist. LEXIS 181281
(E.D. Cal. Dec. 18, 2012)................................................................................18

*AUSA Life Ins. Co. v. Ernst & Young*,
39 F. App'x 667(2d Cir. 2002) ......................................................................13

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990)............................................................................13

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) .......................12

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ................................................................6, 9, 17

*Chatelain v. Prudential-Bache Sec.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ................................................................12

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) .........................................................................4, 5, 9

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992) .......................................................................23

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).......................................................................................3, 10, 12

*de Rommerswael on Behalf of Puma Biotechnology, Inc. v. Auerbach*,
No. SACV 18-00236 AG (JCGx), 2018 WL 6003560
(C.D. Cal. Nov. 5, 2018) ................................................................................7

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)...........................................................................21

*Dura Pharms., Inc v. Broudo*,
544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)............................11

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ...........6, 15, 17, 18

*Evans v. Jeff D.*,
475 U.S. 717, 89 L. Ed. 2d 747, 106 S. Ct. 1531 (1986)...............................5

1

2                                                                                    **Page**

3

4      *Girsh v. Jepson*,
           521 F.2d 153 (3d Cir. 1975)........................................................................9

5      *Glass v. UBS Fin. Servs.*,
           No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476

6          (N.D. Cal. Jan. 26, 2007) ................................................................10, 13

7      *Gribble v. Cool Transps. Inc.*,
           No. CV 06-04863 GAF, 2008 WL 5281665

8          (C.D. Cal. Dec. 15, 2008) ....................................................................18

9      *Hanlon v. Chrysler Corp.*,
           150 F.3d 1011 (9th Cir. 1998) ..............................................................19

10

11     *Hefler v. Wells Fargo & Co.*,
           No. 16-cv-05479-JST, 2018 WL 6619983

12         (N.D. Cal. Dec. 18, 2018) ....................................................................16

13     *Herman v. Andrus Transp. Servs., Inc.*,
           No. EDCV 16-02365 AG (DTBx), 2018 WL 6307902

14         (C.D. Cal. May 30, 2018) .......................................................................5

15     *Hicks v. Morgan Stanley & Co.*,
           No. 01-10071 (RJH), 2005 U.S. Dist. LEXIS 24890

16         (S.D.N.Y. Oct. 24, 2005) ......................................................................21

17

18     *Hughes v. Microsoft Corp.*,
           No. 98-1646C, 2001 U.S. Dist. LEXIS 5976

19         (W.D. Wash. Mar. 21, 2001) ................................................................7, 8

20     *In re Amgen Inc. Sec. Litig.*,
           No. CV 7-2536 PSG, 2016 WL 10571773

21         (C.D. Cal. Oct. 25, 2016).................................................................23, 24

22     *In re Apple Computer Sec. Litig.*,
           No. 84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608

23         (N.D. Cal. Sept. 6, 1991) .....................................................................13

24     *In re Extreme Networks, Inc. Sec. Litig.*,
           No. 15-cv-04883-BLF, 2019 WL 3290770

25         (N.D. Cal. July 22, 2019).....................................................................17

26

27

28

1

2                                                                                      **Page**

3

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555
   (C.D. Cal. June 10, 2005) ................................................................. *passim*

*In re Hyundai & Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019) ...............................................................4

*In re Ikon Office Solutions, Inc.*,
   194 F.R.D. 166 (E.D. Pa. 2000)........................................................9, 21

*In re Mego Fin.Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ............................................... *passim*

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ...............................................................20

*In re Mfrs. Life Ins. Co. Premium Litig.*,
   MDL No. 1109, 1998 U.S. Dist. LEXIS 23217
   (S.D. Cal. Dec. 21, 1998)....................................................................12

*In re Novatel Wireless Sec. Litig.*,
   No. 08cv1689 AJB (RBB), 2013 U.S. Dist. LEXIS 16986
   (S.D. Cal. Feb. 7, 2013) ....................................................................12

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................ *passim*

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ...............................................................16

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...............................................................4, 7

*In re Qwest Commc'ns. Sec. Litig.*,
   No. 01-01451-REB-CBS, 2006 U.S. Dist. LEXIS 71039
   (D. Colo. Sept. 28, 2006) ....................................................................14

*In re Skilled Healthcare Group, Inc.*,
   No. 09-5416 DOC, 2011 U.S. Dist. LEXIS 10139
   (C.D. Cal. Jan. 26, 2011) ................................................................20, 24

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ...............................................................4

**Page**

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab.*
    *Litig.,*
    895 F.3d 597 (9th Cir. 2018), cert. denied, 139 S. Ct. 2645 (2019) ............................5

*In re Warner Commc'ns Sec. Litig.,*
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).............9, 12, 15

*In re Wells Fargo Collateral Prot. Ins. Litig.,*
    No. SAML 17-02797 AG (KESx), 2019 WL 6219875
    (C.D. Cal. Nov. 4, 2019)...............................................................................................19

*Kamakana v. City & Cty. of Honolulu,*
    447 F.3d 1172 (9th Cir. 2006) ....................................................................................16

*Lewis v. Newman,*
    59 F.R.D. 525 (S.D.N.Y. 1973) .....................................................................................9

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998) ..................................................................................5, 6

*Linney v. Cellular Alaska P'ship,*
    No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300
    (N.D. Cal. July 18, 1997).................................................................................................6

*Lundell v. Dell, Inc.,*
    No. C05-3970 JW/RS,, 2006 U.S. Dist. LEXIS 90990
    (N.D. Cal. Dec. 4, 2006) .........................................................................................9, 17

*Milstein v. Huck,*
    600 F. Supp. 254 (E.D.N.Y. 1984) .............................................................................14

*Morgan v. Childtime Childcare, Inc.,*
    No. SACV 17-01641 AG (KESx), 2020 WL 218515
    (C.D. Cal. Jan. 6, 2020) .............................................................................................20

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ *passim*

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982) .............................................................................. *passim*

*Petrovic v. AMOCO Oil Co.,*
    200 F.3d 1140 (8th Cir. 1999) ....................................................................................23

Page

*Republic Nat'l Life Ins. Co. v. Beasley*,
   73 F.R.D. 658 (S.D.N.Y. 1977) ............................................................9

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ...........................................................13

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ...........................................................5, 18

*S.C. Nat'l Bank v. Stone*,
   749 F. Supp. 1419 (D.S.C. 1990)...........................................................23

*Schulein v. Petroleum Dev. Corp.*,
   No. SACV 11-1891 AG (ANx), 2015 WL 12698312
   (C.D. Cal. Mar. 16, 2015) .......................................................................5

*Sudunagunta v. NantKwest, Inc.*,
   No. CV 16-1947-MWF, 2019 WL 2183451
   (C.D. Cal. May 13, 2019) ........................................................................8

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011)...................................................................23

*Taylor v. Shippers Transp. Express, Inc.*,
   No. CV 13-02092-BRO, 2015 WL 12658458
   (C.D. Cal. May 14, 2015) ........................................................................7

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) .....................................................................5

*Vinh Nguyen v. Radient Pharm. Corp.*,
   No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293
   (C.D. Cal. May 6, 2014) ...................................................................19, 23

*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910)..................................................................................4

*Winkler v. NRD Mining, Ltd.*,
   No. 82-3318 (MDG), 2000 U.S. Dist. LEXIS 21477 (E.D.N.Y. Mar.
   31, 2000), *aff'd sub nom. Winkler v. Wigley*, 242 F.3d 369 (2d Cir.
   2000) ........................................................................................................13

**Page**

**STATUTES, RULES AND REGULATIONS**

Freedom of Information Act ...................................................................................18

Private Securities Litigation Reform Act of 1995 ................................................9

Federal Rules of Civil Procedure
     Rule 8(a) ...........................................................................................................11
     Rule 23 ..........................................................................................................6, 23
     Rule 23(e) ......................................................................................................1, 4
     Rule 23(e)(2) ...........................................................................................3, 4, 5, 7
     Rule 23(e)(2)(A) ................................................................................................7
     Rule 23(e)(2)(C) ................................................................................................8
     Rule 23(e)(2)(C)(i) ............................................................................................8
     Rule 23(e)(2)(C)(ii) ........................................................................................15
     Rule 23(e)(2)(C)(iii) .......................................................................................16
     Rule 23(e)(3) ......................................................................................................4

Federal Rule of Evidence
     Rule 408 .............................................................................................................1

**SECONDARY AUTHORITIES**

Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class
     Action Litigation: 2019 Full-Year Review* (NERA Jan. 21, 2020) ............................21

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class
     Action Settlements: 2018 Review and Analysis*, Appendix 3
     (Cornerstone Research 2019) .....................................................................................21

I.      **PRELIMINARY STATEMENT**

Pursuant to FED. R. CIV. P. 23(e) and the FED. R. EVID. 408, Lead Plaintiff Andrey Slomnitsky ("Plaintiff") in the above-entitled action ("Action"), hereby submits this memorandum in support of final approval of the proposed settlement ("Settlement"), and approval of the proposed plan of allocation of the proceeds of the Settlement ("Plan of Allocation"), as set forth in the Stipulation and Agreement of Settlement, dated January 24, 2020 ("Stipulation")[1] between Plaintiff and defendants Scott Caldwell, Robert Buchan, Randy Buffington and Stephen Jones ("Defendants").

Pursuant to the Preliminary Order for Notice and Hearing in Connection with Settlement Proceedings signed on June 10, 2020 (the "Preliminary Approval Order"), this Court certified a class, for settlement purposes, consisting of all those who purchased or otherwise acquired the common stock of Allied Nevada Gold Corporation ("Allied") in the United States or on a securities exchange in the United States between January 18, 2013 through August 5, 2013, inclusive, and who were damaged thereby (*i.e.*, the "Class" and "Class Period"). Also pursuant to the Preliminary Approval Order, the Notice of Proposed Settlement of Class Action (the "Notice") was mailed to 18,957 potential nominees and Class members beginning on July 1, 2020. Epiq Decl. at ¶10.[2]  In addition, the Summary Notice of Proposed Settlement of Class Action and Settlement Hearing ("Summary Notice") was published over the *PR Newswire* on July 8. 2020, July 15, 2020, and July 22, 2020. *See* Epiq Decl. at ¶11. The last day to file objections to any aspect of the Settlement or request

---

[1]  All terms not defined herein have the same definitions as in the Stipulation.

[2]  *See* Declaration of Michael McGuinness, of Epiq Class Action & Claims, Solutions, Inc., the Court-approved professional claims administrator, Regarding (A) Mailing of the Notice and Claim Form; (B) Publication of Summary Notice; and (C) Call Center Services; (D) Posting of Notice and Claim Form on Settlement Website; and (E) Requests for Exclusion Received to Date, dated August 20, 2020 ("Epiq Declaration" or "Epiq Decl."), attached as Exhibit 1 to the Declaration of David A.P. Brower in Support of Lead Plaintiff's Motion for Final Certification of the Class, Final Approval of the Class Notice, Final Approval of the Proposed Settlement, Approval of the Proposed Plan of Allocation, and Plaintiff's Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, and Lead Plaintiff's Request For Reimbursement For His Time and Expenses representing the Class, dated August 24, 2020 (the "Brower Declaration" or "Brower Decl.").

exclusion from the Class is September 28, 2020.  As of August 20, 2020, however, neither Plaintiff's Counsel[3] nor the Claims Administrator has received any objection to the Settlement, final certification of the Class, the notice process, or the Plan of Allocation, or any requests for exclusion from the Class.  *See* Brower Decl. at ¶¶10, 12 14, 15; Epiq Decl. at ¶¶16, 18.[4]

The Settlement provides for payment by the Defendants' directors' and officers' ("D&O") insurance carriers of $14,000,000, plus interest (the "Settlement Fund").  This amount represents approximately 15% of the maximum estimated damages that could be recovered if Plaintiff was completely successful on all issues of liability and damages, every potential Class member filed a claim, and a source existed to cover the full amount of such a judgment.

Plaintiff's Counsel were able to obtain this excellent result only after a thorough investigation of the facts and circumstances underlying Plaintiff's claims, including analyzing large quantities of public and non-public documents; interviewing numerous witnesses, including former Allied employees; consulting extensively with experts; preparing the thoroughly researched and detailed Consolidated Amended Complaint and Second Consolidated Amended Complaint; defending against two separate rounds of motions to dismiss; successfully appealing to the Ninth Circuit of the dismissal with prejudice of the Action; conducting discovery of Defendants and third-parties; pressing the Class claims in Allied's bankruptcy proceedings and negotiating with Allied's bankruptcy counsel to ensure Allied's documents would be available to Plaintiff during and post-bankruptcy; and engaging in lengthy and hard-fought negotiations over a period of years, that ultimately resulted in the Settlement now before the Court for approval.

While Plaintiff's Counsel believes that the Class' claims have merit based on the

---

[3]  Lead Counsel is Brower Piven, A Professional Corporation. Plaintiff's Counsel are Brower Piven, Robbins Geller Rudman & Dowd LLP, and Muckleroy & Lunt, LLC.

[4]  In addition, neither Lead Counsel nor the Claims Administrator has received any objections to the request for attorneys' fees or reimbursement of expenses.

1   evidence adduced, from the outset Defendants adamantly denied liability and asserted they

2   possessed defenses to the Class' claims.  Plaintiff's Counsel, who are highly experienced in

3   prosecuting securities class actions, have concluded that the Settlement is in the best interest

4   of the Class based on an analysis of all the relevant factors present here, including, *inter alia*:

5   (a) the substantial risk, expense, and uncertainty in continuing the litigation through

6   summary judgment, motions under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579

7   (1993), trial, probable post-trial motion(s), and appeal(s); (b) the relative strengths and

8   weaknesses of the claims and defenses asserted; (c) a complete analysis of the evidence

9   obtained and the legal and factual issues presented; (d) past experience in litigating complex

10   actions similar to this Action; and (e) the serious disputes between the parties concerning the

11   merits and damages.

12        As discussed in detail below,  the factors that courts consider to determine the

13   fairness, reasonableness and adequacy of a class action settlement under FED. R. CIV. P.

14   23(e)(2) and in this Circuit demonstrate that the proposed Settlement meets and, indeed,

15   exceeds, the requirements for court approval.  Accordingly, Plaintiff and Plaintiff's Counsel

16   heartily recommend its approval

17        Plaintiff also requests that the Court approve the proposed Plan of Allocation, which

18   was set forth in detail in the Notice sent to Class members.  The Plan of Allocation governs

19   how claims will be calculated and how settlement proceeds will be distributed among

20   "Authorized Claimants" (as defined in the Stipulation and Plan of Allocation).  It was

21   prepared in consultation with Plaintiff's damages expert and is based on the same out-of-

22   pocket measure of damages and formulas that Plaintiff would most likely have proffered to

23   the trier of fact.  The reaction of the Class thus far also supports the Plan of Allocation.  To

24   date, there have been no objections to the Plan of Allocation.

25   **II.     PROCEDURAL AND FACTUAL BACKGROUND**

26        An extensive review of the facts and circumstances surrounding the institution of this

27   Action, its procedural history, Plaintiff's factual investigation, the settlement negotiations,

28   the efforts of Plaintiff's Counsel, and the amount recovered for the Class are set forth in the

1    Brower Declaration.  This Memorandum will focus upon the applicable legal standards for

2    approval of a proposed class action settlement and a proposed plan of allocation of the

3    proceeds of a class action settlement under FED. R. CIV. P. 23(e).

4    **III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS**

5            The law has long favored the compromise of disputed claims, *see, e.g.*, *Williams v.*

6    *First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378

7    (9th Cir. 1995).  There is a "'strong judicial policy that favors settlements, particularly where

8    complex class action litigation is concerned.'"  *In re Hyundai & Kia Fuel Economy Litig.*,

9    926 F.3d 539, 556 (9th Cir. 2019); *see also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101

10   (9th Cir. 2008); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004)

11   (same).[5]  This is because of the difficulties of proof, the uncertainties of the outcome and the

12   typical length of class action litigation.  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036,

13   1041 (N.D. Cal. 2007) (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625

14   (9th Cir. 1982)).

15           FED. R. CIV. P. 23(e) requires judicial approval for the settlement of claims brought

16   as a class action, and FED R. CIV P. 23(e)(2) sets forth the factors to be considered in

17   determining whether a settlement warrants such approval:

18           ***Approval of the Proposal.***  If the proposal would bind class members, the
         court may approve it only after a hearing and only on finding that it is fair,
19           reasonable, and adequate after considering whether:
         (A)    the class representatives and class counsel have adequately
20           represented the class;
         (B)    the proposal was negotiated at arm's length;
21           (C)    the relief provided for the class is adequate, taking into account:
                 (i)    the costs, risks, and delay of trial and appeal;
22                   (ii)    the effectiveness of any proposed method of distributing relief
             to the class, including the method of processing class-member claims;
23                   (iii)    the terms of any proposed award of attorney's fees, including
             timing of payment; and
24                   (iv)    any agreement required to be identified under Rule 23(e)(3);
             and
25           (D)    the proposal treats class members equitably relative to each other.

26

27

28   _____
     [5]    Unless otherwise noted, citations are omitted and emphasis is added throughout.

Courts in the Ninth Circuit also consider the following factors, most of which overlap with FED. R. CIV. P. 23(e)(2): "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; . . . and (8) the reaction of the class members to the proposed settlement." *Schulein v. Petroleum Dev. Corp.*, No. SACV 11-1891 AG (ANx), 2015 WL 12698312, at *2 (C.D. Cal. Mar. 16, 2015) (quoting *Churchill*, 361 F.3d at 575). As the Ninth Circuit has emphasized:

> Deciding whether a settlement is fair is ultimately "an amalgam of delicate balancing, gross approximations and rough justice," best left to the district judge, who has or can develop a firsthand grasp of the claims, the class, the evidence, and the course of the proceedings – the whole gestalt of the case. Accordingly, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge."

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018), cert. denied, 139 S. Ct. 2645 (2019).

Thus, "[a] settlement should be approved if 'it is fundamentally fair, adequate and reasonable.'" *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). This determination is in the "sound discretion of the district courts [which] appraise[s] the reasonableness of particular class-action settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742, 89 L. Ed. 2d 747, 106 S. Ct. 1531 (1986); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (district court enjoys "wide discretion" in evaluating these factors). However, because "'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements,'" courts should not convert settlement approval into an inquiry into the merits. *Herman v. Andrus Transp. Servs., Inc.*, No. EDCV 16-02365 AG (DTBx), 2018 WL 6307902, at *2 (C.D. Cal. May 30, 2018) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (the Ninth Circuit "has long deferred to the private consensual decision of the parties").

1  In exercising its discretion, the court's inquiry should be limited to the extent

2  necessary to reach a reasoned judgment that the agreement is not the product of fraud or

3  overreaching by, or collusion between, the negotiating parties, and that the settlement, taken

4  as a whole, is fair, reasonable and adequate to all concerned.  *Officers for Justice*, 688 F.2d

5  at 625.  Therefore, in reviewing this Settlement under FED. R. CIV. P. 23, the Court should

6  not substitute its business judgment for that of counsel who litigated the case.  *See, e.g.*, *Nat'l*

7  *Rural*, 221 F.R.D. at 528.  As the Ninth Circuit has cautioned:

8  . . . the settlement or fairness hearing is not to be turned into a trial or rehearsal
   for trial on the merits. Neither the trial court nor this court is to reach any
9  ultimate conclusions on the contested issues of fact and law which underlie
   the merits of the dispute, for it is the very uncertainty of outcome in litigation
10 and avoidance of wasteful and expensive litigation that induce consensual
   settlements. The proposed settlement is not to be judged against a
11 hypothetical or speculative measure of what *might* have been achieved by the
12 negotiators.

13 *Officers for Justice*, 688 F.2d at 625.

14 Indeed, a presumption of fairness arises where: (1) counsel is experienced in similar

15 litigation; (2) settlement was reached through arms'-length negotiations; and (3)

16 investigation and discovery are sufficient to allow counsel and the court to act intelligently.

17 *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *11-*12

18 (C.D. Cal. June 10, 2005) (citing *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ,

19 1997 U.S. Dist. LEXIS 243000, at *16 (N.D. Cal. July 18, 1997)) ("The involvement of

20 experienced class action counsel and the fact that the settlement agreement was reached in

21 arm's length negotiations, after relevant discovery had taken place create a presumption that

22 the agreement is fair."), *aff'd,* 151 F.3d 1234 (9th Cir. 1998); *Ellis v. Naval Air Rework*

23 *Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).

24 Accordingly, "[t]he recommendations of plaintiffs' counsel should be given a presumption

25 of reasonableness."  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also*

26 *Nat'l Rural*, 221 F.R.D. at 528.

27

28

**A.    The Proposed Settlement Satisfies the Requirements of FED. R. CIV. P. 23(e)(2)**

**1.    Plaintiff and Its Counsel Have Adequately Represented the Class**

Plaintiff and Plaintiff's Counsel have adequately represented the Class as required by FED. R. CIV. P. 23(e)(2)(A) by diligently prosecuting this Action on behalf of the Class for almost six years.  *See* Brower Decl., *passim*.  Plaintiff and Plaintiff's Counsel stood ready to, and at all times did, advocate throughout for the best interests of the Class.  Thus, Plaintiff satisfies FED. R. CIV. P. 23(e)(2)(A).  *See also* Memorandum of Law in Support of Plaintiff's Motion for Final Certification of the Class and Final Approval of the Class Notice, submitted simultaneously herewith, pp. ___.

**2.    The Proposed Settlement Was Negotiated at Arm's-Length and Was Not the Product of Collusion**

In the Ninth Circuit, a "'strong presumption of fairness'" attaches to a class action settlement reached through arm's-length negotiations between "experienced and well-informed counsel."  *de Rommerswael on Behalf of Puma Biotechnology, Inc. v. Auerbach*, No. SACV 18-00236 AG (JCGx), 2018 WL 6003560, at *3 (C.D. Cal. Nov. 5, 2018); *Taylor v. Shippers Transp. Express, Inc.*, No. CV 13-02092-BRO (PLAx), 2015 WL 12658458, at *10 (C.D. Cal. May 14, 2015) ("'A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.'").

Over the course of the litigation the parties attended two all-day, in-person settlement meetings.  *See* Brower Decl., ¶¶39, 57.  The first, on December 16, 2016 in Toronto, Canada, was unsuccessful and the parties continued to aggressively litigate the case.  The second, held on October 10, 2019 in New York City under the supervision of a mediator, Jed D. Melnick of JAMS, resulted in the parties reaching the financial terms of the Settlement.  *Id.*; *see Hughes v. Microsoft Corp.*, No. 98-1646C, 2001 U.S. Dist. LEXIS 5976, at *17 (W.D. Wash. Mar. 21, 2001) (finding mediator's involvement supports settlement approval) (citing *Pac. Enters.*, 47 F.3d at 378).  Then the parties engaged in three months of further negotiations to hammer out the terms of the formal Stipulation (including the exhibits

1  thereto) on January 24, 2020.  Brower Decl. at ¶¶58-59.

2       This Settlement was reached only after nearly five years of vigorous litigation by all

3  parties and the settlement negotiations were undertaken by experienced counsel on both

4  sides, each with a well-developed understanding of the strengths and weaknesses of their

5  respective claims and defenses.  Plaintiff's Counsel have decades of experience in litigating

6  securities class actions like this one and have negotiated hundreds of settlements of these

7  types of cases, which have been approved by courts across the country.  *See* Brower Decl.,

8  Exhs. F-1 & G-1.  "'The involvement of experienced class action counsel and the fact that

9  the settlement agreement was reached in arm's length negotiations, after relevant discovery

10  [has] taken place create a presumption that the agreement is fair.'" *Sudunagunta v.*

11  *NantKwest, Inc.*, No. CV 16-1947-MWF (JEMx), 2019 WL 2183451, at *3 (C.D. Cal.

12  May 13, 2019).

13       Defendants are represented in this Action by the large national defense firm of

14  Sullivan & Cromwell LLP and well-respected Nevada firms of Erwin & Thompson LLP

15  before remand of the Action from the Ninth Circuit and Dickenson Wright after the remand.

16  Additionally, Allied was represented in its bankruptcy proceedings by other formidable

17  national law firms, Blank Rome LLP and Akin, Gump, Strauss, Hauer & Feld LLP.  It is the

18  considered judgment of counsel for the parties that this Settlement is a fair, reasonable, and

19  adequate resolution of the litigation.  *See Hughes*, 2001 U.S. Dist. LEXIS 5976, at *20-*21.

20       Collectively, these facts demonstrate that the Settlement is entitled to a presumption

21  of fairness and is "not the product of fraud or overreaching by, or collusion between, the

22  negotiating parties." *Officers for Justice*, 688 F.2d at 625.

23         **3.**     **The Proposed Settlement Is Adequate in Light of the**
              **Costs, Risk and Delay of Trial and Appeal**

24

25       Both Fed. R. Civ. P. 23(e)(2)(C) and district courts in the Ninth Circuit consider the

26  substantive adequacy of the proposed settlement in determining final approval.  Fed. R. Civ.

27  P. 23(e)(2)(C)(i) considers "the costs, risks, and delay of trial and appeal," and the relevant

28  overlapping Ninth Circuit factors address "the strength of plaintiffs' case; [and] the risk,

- 8 -

1  expense, complexity, and likely duration of further litigation." *Churchill*, 361 F.3d at 575.

2  While Plaintiff believes his claims have significant merit and the Class would been

3  certified, discovery supported his allegations, and the Action would have survived

4  Defendants' eventual summary judgment motions, succeeded at trial, and survived the

5  inevitable appeals, Plaintiff and Plaintiff's Counsel recognize the numerous risks and

6  uncertainties in proceeding to trial.  As discussed below, and in the Brower Declaration, the

7  risks of continued litigation, when weighed against the substantial and certain recovery for

8  the Class, confirm the reasonableness of the Settlement.

9  To determine whether the Settlement is fair, reasonable, and adequate, the Court must

10  balance the continuing risks of litigation against the benefits afforded to Class members and

11  the immediacy and certainty of a substantial recovery.  *See, e.g.*, *In re Mego Fin.Corp. Sec.*

12  *Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975);

13  *Boyd*, 485 F. Supp. at 617; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 741

14  (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  In other words,

15
16  [t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, [i]t has been held proper to take the bird in hand instead of a prospective flock in the bush.
17

18  *Nat'l Rural*, 221 F.R.D. at 526; *Lundell v. Dell, Inc*., No. C05-3970 JW/RS,, 2006 U.S. Dist.

19  LEXIS 90990, at *9-*10 (N.D. Cal. Dec. 4, 2006) ("This Settlement is the product of

20  uncertainty and careful risk/benefit analyses on both sides.").

21  In the context of approving class action settlements, courts attempting to balance

22  these factors have recognized "that stockholder litigation is notably difficult and notoriously

23  uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l*

24  *Life Ins. Co. v. Beasley*, 73 F.R.D. 658 (S.D.N.Y. 1977).  This is even more so today, in this

25  post-Private Securities Litigation Reform Act of 1995 ("PSLRA") environment, amid

26  defendants' constant attempts to push the envelope and contours of the PSLRA.  *In re Ikon*

27  *Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become

28  more difficult from a plaintiff's perspective . . .").  Here, a balance of these factors weighs

1    heavily in support of approval of the Settlement and unquestionably outweighs the always

2    present possibility that the Class would obtain a smaller recovery or none at all.

3              **a.   Continued Litigation Posed Substantial Risks In Establishing Liability**

4              "'In most situations, unless the settlement is clearly inadequate, its acceptance and

5    approval are preferable to lengthy and expensive litigation with uncertain results.'"  *Nat'l*

6    *Rural*, 221 F.R.D. at 526.  Although much progress was made in litigating this case when

7    the parties reached the Settlement, substantial work remained.  Significantly, no class had

8    yet been certified, and certification was not a foregone conclusion.  The risk of non-

9    certification supports the Settlement.  *See Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC,

10   2007 U.S. Dist. LEXIS 8476, at *11-*12 (N.D. Cal. Jan. 26, 2007).

11             Further, although document production had begun, depositions had not yet

12   commenced.  In a complex case like this one, the parties anticipated taking numerous party

13   and non-party depositions, which would likely take many months to complete at great time

14   and expense to the parties.  After fact discovery concluded, the expert discovery process

15   would take several additional months to complete, including exchange of reports,

16   depositions and foreseeable *Daubert* motions.

17             After completion of all discovery, summary judgment motions would be expected.

18   If the Action went to trial, the parties would then prepare a pre-trial order, propose jury

19   instructions, and file and argue motions *in limine*.  *See Heritage*, 2005 U.S. Dist. LEXIS

20   13555, at *24 ("As summary judgment and trial approach, the relevant evidence would need

21   to be extracted, sifted through, understood, processed, synthesized and ultimately presented

22   to the Court and the jury in a reasonably cogent manner . . . such a task would most likely

23   increase the complexity of this action considerably.").  The parties would expend significant

24   time preparing this case for a lengthy and complicated trial.

25             Inevitably after trial, appeals would follow.  *See id*. (likelihood of appellate practice

26   further supports settlement).  All of the foregoing would extend the case and delay the ability

27   of the Class to recover – if at all – for years.  As the court in *Omnivision* recognized:

28             If the case goes to trial, Plaintiffs' attorneys' fees and costs would increase

1
2

> steadily, cutting further into any award they might receive. Litigation is also time-consuming; if Defendants were to appeal a jury verdict in favor of Plaintiffs, it could be years before Plaintiffs see a dollar.

3
4
5
6

> Against all of this, the Settlement, which offers an immediate and certain award for a large number of potential class members, appears a much better option. As Defendants agree to the class certification for the purposes of the Settlement, there is much less risk of anyone who may have actually been injured going away empty-handed. This factor therefore favors approval of the Settlement.

7   559 F. Supp. 2d at 1042.  So too here, the Settlement results in significant and immediate

8   recovery, without any further risk, expense and delay that continued litigation would entail.

9   Therefore, consideration of the risk, expense, complexity and likely duration of this Action

10  supports approval of the Settlement.

11  
### b. Continued Litigation Posed Substantial Risks In Proving Damages

12  Plaintiff's Counsel are mindful that if they were able to overcome the obstacles to

13  establishing liability at trial, they would still face the additional risks of proving loss

14  causation and damages.  Plaintiff's Counsel believe that, if they prevailed on the liability

15  issues at trial, they would be able to establish both loss causation and damages in the amount

16  estimated by Plaintiff's damages consultant.  However, Plaintiff's Counsel are mindful of

17  Defendants' arguments challenging loss causation that they offered regarding Plaintiff's

18  claims throughout the litigation.  The United States Supreme Court has stated that the law

19  requires that "a plaintiff prove that the defendant's misrepresentation (or other fraudulent

20  conduct) proximately caused the plaintiff's economic loss." *Dura Pharms., Inc v. Broudo*,

21  544 U.S. 336, 346, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005).  While Plaintiff satisfied this

22  element of his claims for pleading purposes under FED. R. CIV. P. 8(a), at trial, Defendants'

23  experts would likely attempt to invoke "the-truth-on-the-market" defense by arguing that the

24  disclosed information was already in the public domain and that Plaintiff could not satisfy

25  the loss causation requirement of his claims. Instead, Defendants would likely argue, as they

26  did on their motions to dismiss, that Allied's business problems were the result of

27  fluctuations in the price of gold and that Class members' losses were not caused by any of

28  the alleged misrepresentations or omissions.

- 11 -

1        Expert testimony is also necessary to establish the amount – and, indeed, the

2  existence – of compensable damages.  *See, e.g.*, *In re Novatel Wireless Sec. Litig.*, No.

3  08cv1689 AJB (RBB), 2013 U.S. Dist. LEXIS 16986, *7-*8 (S.D. Cal. Feb. 7, 2013).  Such

4  an expert evaluation is based not only on stock price history but on other more elusive factors

5  including corporate asset value, cash flow, income and growth prospects for the future,

6  industry and economic trends, the quality of management, the nature and amount of

7  liabilities, and many other variables.  At trial, Plaintiff would likely have faced a motion *in*

8  *limine* to preclude Plaintiff's damage expert's testimony under *Daubert*, and risked a

9  decision that the expert's valuation model might not be admissible in evidence.  *See Novatel*,

10  2013 U.S. Dist. LEXIS 16986, at *12-*15 (ruling inadmissible the plaintiffs' expert

11  testimony concerning damages).

12        If Plaintiff survived the *Daubert* motion, the loss causation and damage valuations

13  of Plaintiff's and Defendants' experts would vary substantially.  In the "battle of experts," it

14  is impossible to predict with any certainty which arguments would find favor with the jury.

15  *See Warner Commc'ns*, 618 F. Supp. at 744-45 (approving settlement where "it is virtually

16  impossible to predict with any certainty which testimony would be credited, and ultimately,

17  which damages would be found to have been caused by actionable, rather than the myriad

18  of nonactionable factors such as general market conditions"); *see also Chatelain v.*

19  *Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992); *Behrens v. Wometco Enters.*,

20  *Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).  Thus, even

21  if Plaintiff prevailed on the issue of liability, significant additional risks would remain in

22  establishing the existence of damages.

23        Accordingly, although Plaintiff's Counsel believe that the case is meritorious, their

24  experience has taught them how the risks discussed above can render the outcome of a trial

25  extremely uncertain.  *See Heritage*, 2005 U.S. Dist. LEXIS 13555 at *25 (settlement is

26  favorable because "while Plaintiffs are confident of the strength of their case, it is imprudent

27  to presume ultimate success at trial and thereafter"); *In re Mfrs. Life Ins. Co. Premium Litig.*,

28  MDL No. 1109, 1998 U.S. Dist. LEXIS 23217, at *17 (S.D. Cal. Dec. 21, 1998) ("even if it

1   is assumed that a successful outcome for plaintiffs at summary judgment or at trial would

2   yield a greater recovery than the Settlement – which is not at all apparent – there is easily

3   enough uncertainty in the mix to support settling the dispute rather than risking no recovery

4   in future proceedings").

5                    **c.      Risk to the Class on Appeal**

6          Even if Plaintiff prevailed at trial, the risks to the Class would not end there.

7   "Regardless of how this Court might have ruled on the merits of the legal issues, the losing

8   party likely would have appealed, and the parties would have faced the expense and

9   uncertainty of litigating an appeal." *Glass*, 2007 U.S. Dist. LEXIS 8476, at *11-*12.  For

10  example, in *In re Apple Computer Sec. Litig.*, No. 84-20148(A)-JW, 1991 U.S. Dist. LEXIS

11  15608 (N.D. Cal. Sept. 6, 1991), a case tried by one of Plaintiff's Counsel, the jury rendered

12  a verdict for plaintiffs after trial.  Based upon the jury's findings, recoverable damages would

13  have exceeded $100 million.  However, the Ninth Circuit overturned the verdict, entering

14  judgment notwithstanding the verdict for the individual defendants, and ordered a new trial

15  with respect to the corporate defendant.  *Id.* at *3. In other cases, the class won a jury verdict,

16  but on appeal the judgment was reversed and the case dismissed.  *See, e.g.*, *Backman v.*

17  *Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441,

18  1449 (11th Cir. 1997) (reversing an $81 million jury verdict and dismissing securities action

19  with prejudice); *AUSA Life Ins. Co. v. Ernst & Young*, 39 F. App'x 667, 674(2d Cir. 2002)

20  (affirming district court's dismissal after a full bench trial and earlier appeal and remand);

21  *Winkler v. NRD Mining, Ltd.*, No. 82-3318 (MDG), 2000 U.S. Dist. LEXIS 21477, at *63

22  (E.D.N.Y. Mar. 31, 2000) (granting defendants' motion for judgment after jury verdict for

23  plaintiffs), *aff'd sub nom. Winkler v. Wigley*, 242 F.3d 369 (2d Cir. 2000).

24         Further, regardless of the amount of damages that might be awarded at trial and

25  maintained through subsequent appeals, there is the risk that the Plaintiff would be unable to

26  collect on any such judgment.  The issuer, Allied, filed bankruptcy, and was dropped from

27  the Action early on.  Any recovery in this Action must come from the Defendants or from

28  their available D&O insurance coverage.  There is little reason to believe that the Defendants

1   themselves would be able to satisfy more than a small portion (if that) of a substantial

2   monetary judgment rendered against them.   The D&O insurance coverage potentially

3   available to satisfy any judgments against Defendants had already been reduced over the

4   course of the litigation by defense costs, and would have been further depleted if the Action

5   had proceeded to trial and through any inevitable subsequent appeals.   In light of these

6   financial realities, it is questionable whether Plaintiff would have ultimately been able to

7   recover significantly more through continued litigation than the $14,000,000 achieved by the

8   Settlement.   This issue contributes heavily to the fairness, reasonableness, and adequacy of

9   the Settlement.  *See, e.g., In re Qwest Commc'ns. Sec. Litig.,* No. 01-01451-REB-CBS, 2006

10  U.S. Dist. LEXIS 71039, at *19 (D. Colo. Sept. 28, 2006) (the potential inability to collect a

11  damages award from a corporation weighs in favor of approval of settlement).

12            **d.    Balancing the Certainty of an Immediate Recovery Against the**
              **Expense and Likely Duration of Protracted Litigation Favors**
13            **Settlement**

14            The immediacy and certainty of a recovery is a factor for the Court to balance in

15  determining whether a proposed settlement is fair, adequate, and reasonable.  *See Heritage*,

16  2005 U.S. Dist. LEXIS 13555, at *27 ("Settlement of this case has distinct advantages over

17  the speculative nature of litigating this case to a verdict.").   Courts consistently have held

18  that "[t]he expense and possible duration of the litigation should be considered in evaluating

19  the reasonableness of [a] settlement."  *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y.

20  1984); *Officers for Justice*, 688 F.2d at 626.  "'In most situations, unless the settlement is

21  clearly inadequate, its acceptance and approval are preferable to lengthy and expensive

22  litigation with uncertain results.'" *Nat'l Rural*, 221 F.R.D. at 526.

23            Approval of the Settlement will mean a present recovery for eligible claimants.  The

24  case had already been pending for almost six years when the Settlement was reached.  If not

25  for this Settlement, there would have been lengthy additional formal discovery, as well as

26  class certification and summary judgment proceedings, the outcome of which is far from

27  certain.  Even assuming the class was certified, and the case withstood summary judgment,

28  "there is a likely chance that this case would go to trial, requiring pre-trial and post-trial

1   motion practice," and "appellate practice would likely follow after completion of

2   proceedings in this Court," further militating "in favor of final approval of this global

3   settlement. *Heritage*, 2005 U.S. Dist. LEXIS 13555, at *25; *see also Warner Commc'ns*,

4   618 F. Supp. at 745 (delay from appeals is a factor to be considered).  Therefore, delay, not

5   just for the trial stage, but through post-trial motions and the appellate process as well, could

6   force Class members to wait many more years for any recovery, further reducing its value.

7   In contrast, the Settlement will ensure a recovery, eliminating the risk of no recovery at all.

8          Moreover, that the Class could hypothetically obtain a greater recovery after trial

9   does not preclude the Court from finding that the Settlement is within a "range of

10  reasonableness" that is appropriate for approval.  *See, e.g.*, *Warner Commc'ns*, 618 F. Supp.

11  at 745.  As the Ninth Circuit has made clear, the very essence of a settlement agreement is

12  compromise, "'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for*

13  *Justice*, 688 F.2d at 624.   "'Naturally, the agreement reached normally embodies a

14  compromise; in exchange for the saving of cost and elimination of risk, the parties each give

15  up something they might have won had they proceeded with litigation . . . .'"  *Id.*; *Ellis*, 87

16  F.R.D. at 19 ("As a quid pro quo for not having to undergo the uncertainties and expenses

17  of litigation, the plaintiffs must be willing to moderate the measure of their demands.").

18          **4.      The Proposed Method for Distributing Relief Is Effective**

19          With respect to FED. R. CIV. P. 23(e)(2)(C)(ii), Plaintiff and Plaintiff's Counsel have

20  taken substantial efforts to ensure that the Class is notified about the proposed Settlement.

21  Pursuant to the Preliminary Approval Order, more than 18,000 copies of the Notice and

22  Proof of Claim were mailed to potential Class members and nominees; the Summary Notice

23  was published three separate times over the *Business Wire*; and a settlement-specific website

24  was created where key documents are posted, including the Stipulation, Notice, Proof of

25  Claim and Preliminary Approval Order.  *See* Epiq Decl., at ¶14.

26          The claims process, which is similar to that commonly used in securities class action

27  settlements, is also effective and includes a standard claim form that requests the information

28  necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation.  (*See*

- 15 -

1  §IV below for a more detailed discussion of the Plan of Allocation.)  The Plan of Allocation

2  will govern how Class members' claims will be calculated and, ultimately, how money will

3  be distributed to Authorized Claimants.  Thus, this factor supports final approval for the

4  same reason that it supported preliminary approval.

5              **5.       Attorneys' Fees**

6       FED. R. CIV. P. 23(e)(2)(C)(iii) addresses "the terms of any proposed award of

7  attorney's fees, including timing of payment." As discussed in the accompanying

8  Memorandum in Support of: (1) Plaintiff's Counsel's Application for an Award of

9  Attorneys' Fees; (2) Plaintiff's Counsel's Request for Reimbursement of Their Litigation

10  Expenses; and (3) Lead Plaintiff's Request for Reimbursement For His Time and Expenses

11  Representing the Class ("Fee Memo"), Plaintiff's Counsel seek an award of attorneys' fees

12  of one-third of the Settlement Amount and expenses of $324,557.52, plus interest on both

13  amounts.  This fee request was fully disclosed in the Notice, *see* Epiq. Decl., Exh. A, at pp.

14  3, 8, approved by Plaintiff, and is in line with other fee awards in the Ninth Circuit.  *See* Fee

15  Memo., at pp. 15-17 (citing case law supporting fee awards equal to one-third of the common

16  fund).

17       As noted in the Stipulation, Plaintiff and Defendants have entered into a standard

18  supplemental agreement which provides that if Class members with a certain number of

19  shares purchased during the Class Period in the aggregate opt out of the Settlement,

20  Defendants have the option to terminate the Settlement.  *See* ECF No. 199, at 7.4.  Such

21  agreements are common and do not undermine the propriety of the Settlement.  *See, e.g.*,

22  *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *7 (N.D. Cal.

23  Dec. 18, 2018) ("The existence of a termination option triggered by the number of class

24  members who opt out of the Settlement does not by itself render the Settlement unfair.")

25  (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015)).  While

26  the Supplemental Agreement is identified in the Stipulation, the terms are confidential.  *See*

27  *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

28

6.      **The Proposed Plan of Allocation Treats Class Members Equitably**

The Plan of Allocation, discussed in more detail in §IV below, and which is set out in full and complete detail in the Notice, discloses how the Settlement proceeds will be distributed among "Authorized Claimants" (*i.e.*, eligible claiming Class members).   It provides formulas for calculating the recognized claim of each Class member, based on the timing and prices paid by Class members for their Allied common stock during the Class Period. It does not treat Plaintiff or any other Class member preferentially.  *See In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) ("Under the Agreement, class members who have submitted timely claims will receive payments on a *pro rata* basis based on the value of their original claim and the number of claims filed.  In granting preliminary approval, the Court found that this proposed allocation did not constitute improper preferential treatment. The Court adheres to its view that the allocation plan is equitable.").  Each eligible Class member, including Plaintiff, will receive a distribution pursuant to the Plan.  Plaintiff, just like all other Class Members, will be subject to the same formulas for distribution of the Settlement.  Further supporting the fairness of the Plan of Allocation, its formulas for allocating the proceeds of the Settlement are based on the same formulas Plaintiff would have used to prove Class members' individual damages at trial.

B.      **The Remaining Ninth Circuit Factors Are Satisfied**

1.      **Discovery Completed and Stage of the Proceedings**

The stage of the proceedings and the amount of information available to both of the parties to assess the strength and weaknesses of the cases is a factor courts consider in considering approval of a class action settlement.  *See Mego Fin.*, 213 F.3d at 459; *Officers for Justice*, 688 F.2d at 625; *Lundell*, 2006 U.S. Dist. LEXIS 90990, at *9 ("Class Counsel possess ample knowledge – gained through experience and thorough investigation – of the factual and legal strengths and weaknesses of their case."); *Ellis*, 87 F.R.D. at 18; *Boyd*, 485 F. Supp. at 616-17.

Here,  Plaintiff's  Counsel  conducted  an  extensive  investigation,  including

1   interviewing former employees; obtaining and reviewing the extensive record of public

2   documents describing the areas of Allied's business touching upon the allegations in the

3   Action; serving extensive discovery requests on Defendants; serving subpoenas on relevant

4   third-parties; obtaining and reviewing over 365,000 pages of non-public documents from

5   Defendants and the third parties relevant to the allegations; obtaining documents through

6   Plaintiff's FOIA request to Bureau of Mining Regulation & Reclamation of the Nevada

7   Division of Environmental Protection; working extensively with their mining, engineering,

8   financial markets, causation and damages experts to identify, *inter alia*, the essential facts

9   underlying Plaintiff's claims and the potential amount of recoverable damages; and

10  thoroughly analyzing Defendants' potential defenses to Plaintiff's claims as revealed

11  through the briefing and arguments on their two motions to dismiss and the two contentious

12  settlement meetings.  As a result, Plaintiff's Counsel had a comprehensive understanding of

13  the strengths and weaknesses of the case and sufficient information to make an informed

14  decision regarding the fairness of the Settlement before presenting it to the Court.  *See Mego*

15  *Fin.*, 213 F.3d at 458.  This factor strongly weighs in favor approval of the Settlement.

16              **2.      The Recommendation of Experienced Counsel Heavily**
                       **Favors Approval of the Settlement**
17

18          As the Ninth Circuit observed in *Rodriguez*, "[t]his circuit has long deferred to the

19  private consensual decision of the parties" and their counsel in settling an action.  563 F.3d

20  at 965.  Courts have recognized that "'[g]reat weight' is accorded to the recommendation of

21  counsel, who are most closely acquainted with the facts of the underlying litigation.'"  *Nat'l*

22  *Rural*, 221 F.R.D. at 528; *Gribble v. Cool Transps. Inc.*, No. CV 06-04863 GAF (SHx), 2008

23  WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008); *Adoma v. Univ. of Phoenix, Inc.*, No. 10-0059

24  LKK/GGH, 2012 U.S. Dist. LEXIS 181281, at *24 (E.D. Cal. Dec. 18, 2012).  For this

25  reason, "'[t]he recommendations of plaintiffs' counsel should be given a presumption of

26  reasonableness.'"  *Omnivision.*, 559 F. Supp. 2d at 1043 ; *see also Ellis*, 87 F.R.D. at 18

27  ("the fact that experienced counsel involved in the case approved the settlement after

28  hard-fought negotiations is entitled to considerable weight").

1    Lead Counsel, Brower Piven, and Plaintiff's Counsel, Robbins Geller, have decades

2   of experience prosecuting securities and other complex class action litigation and have

3   negotiated numerous other substantial class action settlements throughout the country. *See*

4   Brower Decl., Exh. F-1 & G-1.  Having carefully considered and evaluated, *inter alia*, the

5   evidence supporting Plaintiff's claims, the likelihood of prevailing on these claims, the risk,

6   expense, and likely duration of continued litigation, and the likely appeals and subsequent

7   proceedings necessary if Plaintiff did prevail against Defendants at trial, Plaintiff's Counsel

8   has concluded that the Settlement is an excellent result for the Class.  Here, "[t]here is

9   nothing to counter the presumption that Lead Counsel's recommendation is reasonable."

10   *Omnivision*, 559 F. Supp. 2d at 1043.

11    Further, Defendants are represented by one of the largest, most prestigious national

12   law firms as well as highly experienced and well-respected Nevada counsel.  Indeed, the

13   difficulty in reaching a settlement acceptable to Plaintiff here is demonstrated by the fact the

14   Settlement was reached only after all of Plaintiff's claims were sustained after an appeal to

15   the Ninth Circuit and Defendants' attempts to limit their liability at the pleading stage had

16   failed.  That such qualified and well-informed counsel endorse the Settlement as being fair,

17   reasonable and adequate to the Class heavily favors this Court's approval of the Settlement.

18    **C.    Reaction of the Class Supports Approval of the Settlement**

19    The reaction of the Class to the Settlement also supports approving the Settlement.

20   "[T]he fact that the overwhelming majority of the class willingly approved the offer and

21   stayed in the class presents at least some objective positive commentary as to its fairness."

22   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Mego Fin.*, 213

23   F.3d at 459 (that there was only one opt out supports upholding district court's approval of

24   settlement); *Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC (MLGx),

25   2014 WL 1802293, at *4 (C.D. Cal. May 6, 2014) ("There have been no objections to the

26   Settlement itself, and so the Court finds this factor weighs in favor of the Settlement.").

27    It is thus well established that the absence of a large number of objectors to a

28   proposed class action settlement raises a strong presumption that the terms of the proposed

settlement are favorable to the class members.  *See, e.g., In re Wells Fargo Collateral Prot. Ins. Litig.*, No. SAML 17-02797 AG (KESx), 2019 WL 6219875, at *4 (C.D. Cal. Nov. 4, 2019) ("Together, the requests for exclusion and objections represents slightly more than 0.0037% of the total class.  This small percentage shows a positive class reaction to the settlement agreement and further supports a finding that the settlement is fair, reasonable, and adequate.").[6]

The Notice was sent by first class direct U.S. mail to over 18,000 potential nominees and Class members and a Summary Notice was published three separate times over the *PR Newswire*.  Plaintiff's Counsel have complied with the mandate of the Ninth Circuit requiring counsel's fee motion to be filed before the deadline for objections to afford class members the opportunity to "thoroughly . . . examine counsel's fee motion . . ."  *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010).  Class members have more than 30 days to review Plaintiff's papers in support of the Settlement (as well as the Plan of Allocation and Plaintiff's Counsel's application for attorneys' fees and reimbursement of expenses).  The time for objecting to the Settlement expires on September 28, 2020.  As of August 24, 2020, there have been no requests for exclusion from the Class or objections to the Settlement.  *See also Morgan v. Childtime Childcare, Inc.*, No. SACV 17-01641 AG (KESx), 2020 WL 218515, at *2 (C.D. Cal. Jan. 6, 2020) ("Lack of objection speaks volumes for a positive class reaction to the settlement.").[7]

## 1.    The Settlement Amount

"'An important consideration in judging the reasonableness of a settlement is the

---

[6]    *See also Omnivision*, 559 F. Supp. 2d at 1043 ("'[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'"); *In re Skilled Healthcare Group, Inc.,* No. 09-5416 DOC (RZx), 2011 U.S. Dist. LEXIS 10139, at *11 (C.D. Cal. Jan. 26, 2011) ("In this case, the Court interprets the lack of anything other than a de minimus objection as ratification of the settlement terms by the class."); *Heritage*, 2005 U.S. Dist. LEXIS 13555, at *34; *Nat'l Rural*, 221 F.R.D. at 528.

[7]   Plaintiff will file an update with final numbers on objections and exclusions, if any, in accordance with the Preliminary Approval Order, ten days before the final settlement hearing on November 16, 2020.

1    strength of the plaintiffs' case on the merits balanced against the amount offered in the

2    settlement.'  However, in balancing, 'a proposed settlement is not to be judged against a

3    speculative measure of what might have been awarded in a judgment in favor of the class.'"

4    *Nat'l Rural*, 221 F.R.D. at 526.  Balancing all of the risks outlined above and in the Brower

5    Declaration, with a $14,000,000 Settlement, which represents approximately 15% of the

6    maximum damages that Plaintiff's expert estimates could have been recovered if Plaintiff

7    was completely successful in the Action, weighs heavily in favor of Court approval.

8         "It is well-settled law that a cash settlement amounting to only a fraction of the

9    potential recovery does not *per se* render the settlement inadequate or unfair," *Officers for*

10   *Justice*, 688 F.2d at 628; *see also Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir.

11   1974) (noting that there is no reason, at least in theory, why a satisfactory settlement could

12   not amount to a "hundredth or even a thousandth of a single percent of the potential

13   recovery").  Here, the 15 % recovery is far higher than percentages that have received

14   approval by the courts.  *See Omnivision*, 559 F. Supp. 2d at 1046 ("As previously discussed,

15   the Settlement creates a total award of approximately 9% of the possible damages, which is

16   more than triple the average recovery in securities class action settlements.").  The median

17   settlement as a percentage of estimated damages in the Ninth Circuit of 5.1% from 2009

18   through 2018.  *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class*

19   *Action Settlements: 2018 Review and Analysis* at 19, Appendix 3 (Cornerstone Research

20   2019), Brower Decl., Exh. D.   And according to National Economic Research Associates,

21   Inc. ("NERA"), in 2019 the median ratio of settlements to NERA-defined Investor Losses

22   was 2.1%, which further supports that the Settlement here is a very good recovery for the

23   Class.  *See* Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action*

24   *Litigation: 2019 Full-Year Review* at 20 (NERA Jan. 21, 2020), Brower Decl., Exh. E.  *See*

25   *Omnivision*, 559 F. Supp. 2d at 1042 (finding that settlement amount was reasonable in part

26   because it was "higher than the median percentage of investor losses recovered in recent

27   shareholder class action settlements"); *Ikon*, 194 F.R.D. at 183-84 (approving settlement

28   amounting to 5.2% of damages); *Hicks v. Morgan Stanley & Co.*, No. 01-10071 (RJH), 2005

1  U.S. Dist. LEXIS 24890, at *19 (S.D.N.Y. Oct. 24, 2005) (approving settlement representing

2  3.8% of plaintiffs' estimated damages).

3        This achievement alone justifies approval of the Settlement.  However, in securities

4  class actions, following the verdict on liability, the practice is for a claims administrator to

5  require each class member to file a claim and subject himself to potential attack on issues

6  such as reliance, before the total amount of Defendants' actual liability is determined.

7  Therefore, the $93.4 million figure arrived at by Plaintiff's financial expert is only a starting

8  point since it not only assumes complete success on all issues of liability and damages, but

9  also assumes that all members of the Class who can make a claim for payment will

10  claim.  That, however, is almost never the case.  Rather, based on experience in numerous

11  other cases and consultation with damages and market experts, typically 90% of institutional

12  class members and 30% of non-institutional class members actually submit claims.  Here,

13  Plaintiff's expert estimates that approximately 47 million shares were purchased during the

14  Class Period and held through a curative disclosure and that of those shares approximately

15  33 million shares were purchased by institutions.  Therefore, 30% of the eligible Class shares

16  were purchased by non-institutional investors and 70% of the shares were purchased by

17  institutional investors.  Based on Plaintiff's damages expert's estimate of Class-wide

18  damages of approximately $93.4 million, $28.4 million in claims are estimated to be made

19  by non-institutional Class members and $58.8 million in claims are estimated to be made by

20  institutional investors.  In total, applying the foregoing estimates, approximately $67.3

21  million in claims are estimated to be made by eligible Class members (*i.e.,* 30% x $93.4mm

22  = $28mm x 30% = $8.4mm for non-institutional investors and 70% x $93.4mm = $65.4mm

23  x 90% = $58.8mm for institutional investors). Based on the $14,000,000 Settlement, this

24  represents an estimated actual recovery to claiming Class members of approximately 21%

25  of their maximum possible recovery, assuming complete success on all issues of liability

26  and damages for the entire Class.

27        A Settlement between 15% and 21% of Class members' best possible result in the

28  litigation – albeit many years in the future and fraught with the ever present danger of no

1  recovery at all – when compared to the median percentage recovery of investors' losses of

2  between approximately 2% and 5% generally recovered in securities class action

3  settlements, strongly supports the fairness, reasonableness and adequacy the Settlement here.

4          Based on all of the factors discussed above, the Settlement should be approved by

5  the Court as fair, reasonable and adequate and in the best interests of the Class

6  **IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND
        SHOULD BE APPROVED BY THE COURT**

7

8          Plaintiff also seeks approval of the Plan of Allocation.  The Plan of Allocation is set

9  forth in full in the Notice mailed to potential Class members.  Epiq Decl., Ex. A, at pp 10-

10  14. To date, no Class member has objected to the Plan of Allocation.

11          Assessment of a plan of allocation of settlement proceeds in a class action under FED.

12  R. CIV. P 23 is governed by the same standards of review applicable to the settlement as a

13  whole – the plan must be fair, reasonable, and adequate.  *Class Plaintiffs v. Seattle*, 955 F.2d

14  1268, 1284 (9th Cir. 1992); *Omnivision*, 559 F. Supp. 2d at 1045; *In re Amgen Inc. Sec.*

15  *Litig.*, No. CV 7-2536 PSG (PLAX), 2016 WL 10571773, at *7 (C.D. Cal. Oct. 25, 2016).

16  "However, an allocation formula need only have a reasonable, rational basis, particularly if

17  recommended by experienced and competent counsel."  *Heritage*, 2005 U.S. Dist. LEXIS

18  13555, at *38.  There is no requirement that a settlement must benefit all class members

19  equally.  *See Mego Fin.*, 213 F.3d at 461; *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152

20  (8th Cir. 1999) (upholding distribution plan where class members received different levels

21  of compensation and finding that no subgroup was treated unfairly); *S.C. Nat'l Bank v. Stone*,

22  749 F. Supp. 1419, 1437 (D.S.C. 1990) (approving settlement where some class members

23  did not share in recovery). These decisions acknowledge that the goal of a distribution plan

24  is fairness to the class as a whole, taking into account the various disclosures during the

25  Class Period and establishing a claim value based on the market's reaction to each new piece

26  of information.  District courts enjoy "'broad supervisory powers over the administration of

27  class action settlements to allocate the proceeds among the claiming class members

28  equitably.'"  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011).  An allocation

1   formula need only have a "'reasonable, rational basis, particularly if recommended by

2   experienced and competent counsel.'" *Radient*, 2014 WL 1802293, at *5.

3          In order to develop a fair distribution plan, Lead Counsel, with the assistance of

4   Plaintiff's financial expert, developed the Plan of Allocation based on the damages analysis

5   and distribution of estimated damages rendered by Plaintiff's damages expert earlier in the

6   litigation.  This analysis was, at the time the Settlement was reached, the best estimate of

7   damages that Plaintiff had and is still the analysis that Plaintiff would likely have presented

8   to the trier of fact "grounded in a formula that will compensate class members for the losses

9   related to their" purchases of Allied stock.  *Amgen*, 2016 WL 10571773, at *8.

10         The Plan of Allocation, of course, like Plaintiff's estimate of Class-wide damages

11   itself, assumes complete success on all aspects of liability and damages at trial and post-trial,

12   and 100% of Class members filing claims. Thus, the Plan of Allocation credits all Class

13   members with the best possible result they could have achieved based on the number of

14   Allied shares they purchased, their cost basis in those shares, and the timing of their

15   purchases and sales of Allied common stock.  Authorized Claimants will recover their

16   proportional "pro rata" amount of the Net Settlement Fund based on their recognized loss,

17   calculated under the Plan of Allocation using the transactional information provided by

18   claimants in their claim forms.  Shaping each class member's recovery around these factors

19   is only fair.  *Skilled Healthcare*, 2011 U.S. Dist. LEXIS 10139, at *12.

20         Based upon the foregoing, Plaintiff and Plaintiff's Counsel submit that the Plan of

21   Allocation will equitably apportion the Net Settlement Fund among all eligible claiming

22   Class members using the principles set forth in the case law cited above, and should be

23   approved.

24   **V.**     **CONCLUSION**

25         For the reasons set forth above and in the Brower Declaration, Plaintiff and Plaintiff's

26   Counsel submit that the Settlement should be approved as fair, reasonable and adequate, and

27   the Plan of Allocation should be approved as fair and equitable.

28

1

2    DATED:  August 24, 2020                     Respectfully submitted,

3                                                **MUCKLEROY LUNT, LLC**

4                                                        */s/ Martin A. Muckleroy*
                                                 Martin A. Muckleroy (SBN 9634)
5                                                6077 South Fort Apache Road, Suite 140
                                                 Las Vegas, Nevada 89148
6                                                Telephone: (702) 907-0097
                                                 Facsimile: (702) 938-4065
7                                                martin@muckleroylunt.com

8                                                *Counsel for Lead Plaintiff Andrey Slomnitsky*
                                                 *and Liaison Counsel for the Class*

9                                                **BROWER PIVEN**
                                                   A Professional Corporation
10                                               David A.P. Brower
                                                 136 Madison Avenue, 5th Floor
11                                               New York, New York 10016
                                                 Telephone: (212) 501-9000
12                                               Facsimile: (212) 501-0300|
                                                 brower@browerpiven.com
13
                                                 **BROWER PIVEN**
14                                                 A Professional Corporation
                                                 Charles J. Piven (admitted *pro hac vice*)
15                                               3704 North Charles Street, #1301
                                                 Baltimore, Maryland 21218
16                                               Telephone: (410) 332-0030
                                                 Facsimile: (410) 685-1300
17                                               piven@browerpiven.com

18                                               *Counsel for Lead Plaintiff Andrey Slomnitsky*
                                                 *and Lead Counsel for the Class*
19
                                                 **ROBBINS GELLER RUDMAN**
20                                                 **& DOWD LLP**
                                                 Samuel H. Rudman (admitted *pro hac vice*)
21                                               Joseph Russello (admitted *pro hac vice*)
                                                 William J. Geddish (admitted *pro hac vice*)
22                                               58 South Service Road, Suite 200
                                                 Melville, New York  11747
23                                               Telephone:  (631) 367-7100
                                                 Facsimile: (631) 367-1173
24                                               srudman@rgrdlaw.com
                                                 jrussello@rgrdlaw.com
25                                               wgeddish@rgrdlaw.com

26                                               *Additional Counsel for Plaintiff and the Class*

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that the foregoing document was filed on August 24, 2020, and will

3

be sent electronically to the registered participants as identified on the Notice of Electronic

4

Filing (NEF).

5

6

*/s/ Martin A. Muckleroy*

Martin A. Muckleroy

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28